## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | **CIVIL ACTION NO. 05-666** |
| **HYDROGEN PEROXIDE ANTITRUST LITIGATION** | **CLASS ACTION** |
| **This Document Relates To:** | |
| **ALL ACTIONS** | |
| | **JURY TRIAL DEMANDED** |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs, by their undersigned counsel, individually and on behalf of the plaintiff Classes of all those similarly situated (as hereinafter defined), bring this action for damages under the antitrust laws of the United States against defendants, demanding a trial by jury and complaining and alleging as follows:

### NATURE OF THE CASE

1.      This lawsuit is brought as a class action on behalf of all persons who purchased hydrogen peroxide and its downstream products sodium perborate and sodium percarbonate (collectively, "Hydrogen Peroxide") directly from defendants, their predecessors and successors, or their parents, subsidiaries or affiliates, from at least as early as January 1, 1994 to January 5, 2005 (the "Class Period").  Plaintiffs allege that during the Class Period, the defendants conspired to fix, raise, maintain or stabilize prices of, to control and restrict output for, and to allocate markets and customers for, Hydrogen Peroxide sold in the United States.  Because of defendants' unlawful conduct, plaintiffs and members of the Classes paid artificially inflated

prices for Hydrogen Peroxide and, as a result, have suffered antitrust injury to their business or property.

### JURISDICTION AND VENUE

2.    This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against defendants for the injuries sustained by plaintiffs and the members of the Classes by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3.    Jurisdiction is conferred upon this Court by 28 U.S. C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

4.    Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26, and 28 U.S.C. § 1391(b), (c) and (d).  Venue is proper in this judicial district because, during the Class Period, one or more of the defendants resided, transacted business, were found, or had agents in this district, and because certain of the events giving rise to plaintiffs' claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.  In addition, defendants maintain offices, have agents, transact business, or are found within this judicial district.

5.    This Court has *in personam* jurisdiction over each of the defendants because, *inter alia*, each defendant: (a) transacted business in the United States; (b) directly or indirectly manufactured, sold, shipped and delivered substantial quantities of Hydrogen Peroxide throughout the United States; (c) had substantial aggregate contacts with the United States as a whole; and/or (d) was engaged in an illegal price-fixing, market-allocation and output-controlling conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business throughout the United States,

including in this district.  Further jurisdictional facts as to certain foreign defendants are alleged below.

**PLAINTIFFS**

**Private Plaintiffs**

6.    During the relevant time period, the following plaintiffs purchased Hydrogen Peroxide directly from one or more of the defendants and has been injured in its business and property by reason of the antitrust violations alleged in this Complaint, because the prices it paid for Hydrogen Peroxide were artificially fixed, raised, maintained or stabilized at anti-competitive levels by defendants and their co-conspirators:

(a)    Plaintiff Artco Chemical, Inc. ("Artco") is a New York corporation with its principal place of business in Glenmont, New York.

(b)    Plaintiff Astro Chemicals, Inc. ("Astro") is a Massachusetts corporation with its principal place of business in Springfield, Massachusetts.

(c)    Plaintiff Atlantis Carribean Chemical Corp. ("Atlantis") is a Puerto Rican corporation with its principal place of business in Toa Baja, Puerto Rico.

(d)    Plaintiff Borden & Remington Corp. ("Borden") is a Massachusetts corporation with its principal place of business in Fall River, Massachusetts.

(e)    Plaintiff Chem/Serv, Inc. ("Chem/Serv") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.

(f)    Plaintiff EMCO Chemical Distributors, Inc. ("EMCO") is an Illinois corporation with its principal place of business in Chicago, Illinois.

(g)    Plaintiff Finch Pruyn and Company, Inc. ("Finch") is a New York corporation with its principal place of business in Glens Falls, New York.

3

(h)     Plaintiff Interstate Chemical Company ("Interstate") is a Pennsylvania corporation with its principal place of business in Hermitage, Pennsylvania.

(i)     Plaintiff Lensco Products, Inc. ("Lensco") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

(j)     Plaintiff Lincoln Paper & Tissue, LLC ("Lincoln") is a Delaware corporation with its principal place of business in Lincoln, Maine.

(k)     Plaintiff Northern Chemical Corporation ("Northern") is a Rhode Island corporation with its principal place of business in Providence, Rhode Island.

(l)     Plaintiff Ohio Chemical Services, Inc. ("Ohio Chemical") is an Ohio corporation with its principal place of business in Columbus, Ohio.

(m)     Plaintiff James R. Pacific ("Pacific") was, at all relevant times, the owner of, and is successor in interest to, Eagle Chemical Company, a Pennsylvania corporation with its principal place of business located in Reading, Pennsylvania.  Plaintiff Pacific sold certain physical assets of Eagle Chemical Company in or about June 2001, but retained the causes of action alleged herein.

(n)     Plaintiff Roberts Chemical Company, Inc. ("Roberts") is a Rhode Island corporation with its principal place of business located in Pawtuckett, Rhode Island.

(o)     Plaintiff Safer Textile Processing Corp. ("Safer Textile") is a New Jersey corporation with its principal place of business in Newark, New Jersey.

(p)     Plaintiff Standard Technology Applied Resources, Inc. ("Standard Technology") is a New Jersey corporation, with its principal place of business in Linden, New Jersey.

(q)     Plaintiff Young Chemical Company ("Young Chemical") is an Ohio Corporation with its principal place of business in Brook Park, Ohio.

7.      Plaintiffs Artco, Astro, Atlantis, Borden, Chem/Serv, EMCO, Finch, Interstate, Lensco, Lincoln, Northern, Ohio Chemical, Pacific, Roberts, Safer Textile, Standard Technology, and Young Chemical are hereinafter collectively referred to as the "Private Plaintiffs."

**Governmental Plaintiffs**

8.      Plaintiff City of Philadelphia is a municipality within the Commonwealth of Pennsylvania. During the relevant time period, plaintiff City of Philadelphia purchased Hydrogen Peroxide from a distributor who had purchased the Hydrogen Peroxide directly from one or more of the defendants and who has duly assigned its claim to the City of Philadelphia. By virtue of this assignment, the City of Philadelphia succeeded to all of the distributor's right, title and interest as a direct purchaser of Hydrogen Peroxide from one or more defendants, and the City thus has standing to maintain the claims asserted in this Complaint as a direct purchaser of Hydrogen Peroxide. Plaintiff City of Philadelphia, both directly and by virtue of its receipt of an assignment of the distributor's claims, has been injured in its business and property by reason of the antitrust violations alleged in this Complaint, because the prices it paid for Hydrogen Peroxide were artificially fixed, raised, maintained or stabilized at anti-competitive levels by defendants and their co-conspirators.

9.      Plaintiff Borough of Middletown is a borough within the Commonwealth of Pennsylvania. Plaintiff Middletown Borough Authority is a government agency within the Borough of Middletown and the Commonwealth of Pennsylvania. During the relevant time period, plaintiff Borough of Middletown has been the lessee/operator of the Middletown Public Sewer System and plaintiff Middletown Borough Authority has been the owner/administrator of the sewer system. During the relevant time period, plaintiffs Borough of Middletown and

Middletown Borough Authority purchased Hydrogen Peroxide from a distributor who had purchased the Hydrogen Peroxide directly from one or more of the defendants, and who has duly assigned its claims to plaintiffs. By virtue of this assignment, plaintiffs Borough of Middletown and Middletown Borough Authority succeeded to all of the distributor's right, title and interest as a direct purchaser of Hydrogen Peroxide from one or more defendants and thus have standing to maintain the claims asserted in this Complaint as a direct purchaser of Hydrogen Peroxide. Plaintiffs Borough of Middletown and Middletown Borough Authority, both directly and by virtue of their receipt of an assignment of the distributor's claims, have been injured in their business and properly by reason of the antitrust violations alleged in this Complaint, because the prices they paid for Hydrogen Peroxide were artificially fixed, raised, maintained or stabilized at anti-competitive levels by defendants and their co-conspirators.

10.     The City of Philadelphia, the Borough of Middletown, and the Middletown Borough Authority are hereinafter collectively referred to as the "Governmental Plaintiffs."

## DEFENDANTS

11.     Defendant Arkema Inc., formerly known as Atofina Chemicals, Inc. and Elf Atochem North America, Inc., is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. Arkema Inc., its predecessors, subsidiaries and affiliates manufactured, marketed and sold Hydrogen Peroxide in the United States and in this district during the Class Period.

12.     Defendant Arkema S.A., formerly known as Atofina S.A. and Elf Atochem S.A., is a French corporation with its principal place of business in Puteaux, France. Arkema S.A. has indirectly owned Arkema Inc. In 2000, following TotalFina S.A.'s acquisition of Elf Aquitaine, S.A., the chemical operations of the combined company were renamed Atofina S.A. In October

2004, Atofina Chemicals, S.A. was renamed Arkema S.A.  At times relevant to this Complaint, Arkema S.A. directly or through the control of its predecessors, subsidiaries and affiliates manufactured, marketed or sold Hydrogen Peroxide in the United States and in this district.

     (a)     According to its website, Arkema S.A. claims that it "manufacture[s] thousands of chemicals worldwide[;]" that,"[w]ith its internationally recognized brands, Arkema holds leadership positions in its principal markets[;]" that it is "[l]ocated in Europe, the United States and Asia[;]"  and that it claims to be "[r]anked third in the world in hydrogen peroxide[.]"

     (b)     Arkema S.A. dominated and controlled the finances, policies and business practices of Arkema, Inc. relating to the antitrust violations alleged in this Complaint which injured the plaintiffs.  Plaintiffs' claims arise out of Arkema, S.A.'s contacts with this district, and Arkema S.A. knew, or had good reason to know, that its conduct would have effects in this district.

     13.     Defendant Total S.A. ("Total"), formerly known as TotalFinaElf S.A. and Total, S.A., is a French corporation with its principal place of business in Courbevoie, France.  Total has been the ultimate parent of Arkema S.A. and Arkema Inc.  Prior to June 1999, Total operated under the name Total, S.A.  From June 1999 through March 2000, Total operated as TotalFina, S.A.  Following its acquisition of the controlling interests of Elf Aquitaine, S.A., Total was renamed TotalFinaElf S.A. and operated under that name until May 2003, when TotalFinaElf S.A. was renamed Total, S.A.  At times relevant to this Complaint, Total manufactured, marketed or sold Hydrogen Peroxide in the United States and in this district during the Class Period through control of its predecessors, successors, affiliates and/or subsidiaries.

     (a)     Total identifies itself on its website as a "leading multinational energy company with 110,783 employees and operations in more than 130 countries . . . . Total is also a

world-class chemicals manufacturer." It states: "Our Chemicals business is a European or world leader in each of its markets . . . . Europe accounted for 59% of sales, the United States 26%, and the remaining sales were generated predominantly in Asia and Latin America." Thus, the United States accounts for more than one quarter of Total's chemicals business.

        (b)     Arkema Inc. and Total are linked by common officers and directors.

        (c)     Total dominated and controlled the finances, policies and business practices of Arkema S.A. and Arkema, Inc. relating to the antitrust violations alleged in this Complaint which injured the plaintiffs. Plaintiffs' claims arise out of Total's contacts with this district, and Total knew, or had good reason to know, that its conduct would have effects in this district.

      14.     Defendants Arkema Inc., Arkema S.A. and Total are collectively referred to herein as the "Atofina Defendants."

      15.     Defendant FMC Corporation ("FMC") is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. FMC and its subsidiaries and affiliates manufactured, marketed, and sold Hydrogen Peroxide in the United States and in this district during the Class Period.

      16.     Defendant Solvay Chemicals, Inc. ("Solvay Chemicals") maintains its principal place of business in Houston, Texas. Solvay Chemicals is a Delaware corporation and a wholly-owned subsidiary of defendant Solvay America, Inc. Solvay Interox, Inc., Solvay Minerals, Inc. and Solvay Fluorides, Inc. were merged into Solvay Chemicals in late 2003. Solvay Chemicals, its predecessors, subsidiaries and affiliates manufactured, marketed and sold Hydrogen Peroxide in the United States and in this district during the Class Period.

17.     Defendant Solvay America, Inc. ("Solvay America") is a Delaware corporation with its principal place of business in Houston, Texas.  Solvay America is a wholly-owned subsidiary of defendant Solvay S.A.  At times relevant to this Complaint, Solvay America manufactured, marketed or sold Hydrogen Peroxide in the United States and in this district either directly or through the control of its affiliates or subsidiaries.  Solvay America dominated and controlled the finances, policies and business practices of Solvay Chemicals relating to the antitrust violations alleged in this Complaint which injured the plaintiffs.

18.     Defendant Solvay S.A. is a Belgian corporation with its principal place of business in Brussels, Belgium.  At times relevant to this Complaint, Solvay S.A. manufactured, marketed or sold Hydrogen Peroxide in the United States and in this district through control of its predecessors, affiliates or subsidiaries, including defendants Solvay America and Solvay Chemicals.

(a)     Defendant Solvay S.A. has admitted that it is engaged in "commerce" covered by the federal antitrust laws.  It is, therefore, subject to the personal jurisdiction of the federal courts.  By complaint dated April 29, 2002, the United States Federal Trade Commission ("FTC") charged that Solvay S.A.'s proposed acquisition of shares of Ausimont S.p.A., if consummated, would result in a violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 7 of the Clayton Act, 15 U.S.C. § 18.  As part of a consent agreement and order that settled an action brought against it by the FTC, Solvay S.A. admitted "all the jurisdictional facts" set forth in the FTC's complaint, which alleged that "[a]t all relevant times herein, Respondent Solvay S.A. has been and is now engaged in commerce, as 'commerce' is defined in Section 1 of the Clayton Act, 15 U.S.C. § 12, and is a corporation whose business is in or

affecting commerce as 'commerce' is defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44."

(b)    Solvay S.A. dominated and controlled the finances, policies and business practices of Solvay Chemicals and Solvay America relating to the antitrust violations alleged in this complaint which injured the plaintiffs. Plaintiffs' claims arise out of Solvay S.A.'s contacts with this district, and Solvay S.A. knew, or had good reason to know, that its conduct would have effects in this district.

19.    Defendants Solvay Chemicals, Solvay America, and Solvay S.A. are collectively referred to herein as the "Solvay Defendants."

20.    Defendant Degussa Corporation ("Degussa"), formerly known as Degussa-Hüls Corporation, is an Alabama corporation with its principal place of business in Parsippany, New Jersey. Degussa is a wholly-owned subsidiary of defendant Degussa A.G. Degussa, its predecessors, subsidiaries and affiliates manufactured, marketed or sold Hydrogen Peroxide in the United States and in this district during the Class Period.

21.    Defendant Degussa A.G., formerly known as Degussa-Huls A.G., is a German company with its principal place of business in Düsseldorf, Germany. At times relevant to this Complaint, Degussa A.G. manufactured, marketed or sold Hydrogen Peroxide in the United States and in this district through control of its predecessors, affiliates or subsidiaries, including its wholly-owned subsidiary defendant Degussa Corporation.

(a)    Degussa A.G. states on its website that its peroxygen chemicals business unit "is the second-largest manufacturer of . . . hydrogen peroxide in the world." Degussa A.G. has admitted that, specifically with regard to its Hydrogen Peroxides business, it is engaged in "commerce" covered by the antitrust laws and thus, subject to the personal jurisdiction of the

U.S. courts.  By complaint dated June 10, 1998, the FTC charged that Degussa A.G.'s proposed

acquisition of the Hydrogen Peroxide production assets of E.I. du Pont de Nemours & Co. would

result in a violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 7 of the Clayton

Act, 15 U.S.C. § 18.  As part of a consent agreement and order that settled that action, Degussa

A.G. admitted "all the jurisdictional facts set forth in the . . . complaint," that "[a]t all relevant

times herein, Respondent[] Degussa A.G. . . . [has] been and [is] now engaged in commerce, as

'commerce' is defined in Section 1 of the Clayton Act, 15 U.S.C. § 12, and [is a] corporation[]

whose business is in or affecting commerce as 'commerce' is defined in Section 4 of the Federal

Trade Commission Act, 15 U.S.C. § 44."

      (b)    Degussa A.G. dominated and controlled the finances, policies and

business practices of Degussa Corporation relating to the antitrust violations alleged in this

Complaint which injured the plaintiffs.  Plaintiffs' claims arise out of Degussa A.G.'s contacts

with this district, and Degussa A.G. knew, or had good reason to know, that its conduct would

have effects in this district.

      22.    Defendants Degussa and Degussa A.G. are collectively referred to herein as the

"Degussa Defendants."

      23.    Defendant EKA Chemicals, Inc. ("EKA") is a Delaware corporation with its

principal place of business in Marietta, Georgia.  EKA is a wholly-owned subsidiary of

defendant Akzo Nobel Inc.  EKA and its predecessors manufactured, marketed or sold Hydrogen

Peroxide in the United States and in this district during the Class Period.

      24.    Defendant Akzo Nobel Inc. is a Delaware corporation with its principal place of

business in Chicago, Illinois.  Akzo Nobel Inc. is a wholly-owned subsidiary of Akzo Nobel

N.V.  At times relevant to this Complaint, Akzo Nobel Inc. directly or through the control of its

subsidiaries and affiliates manufactured, marketed, or sold Hydrogen Peroxide in the United States and in this district.

25.     Defendant Akzo Nobel N.V. is a Netherlands company with its principal place of business at 76 Velperweg, 6824 BM Arnhem, The Netherlands.  At times relevant to this Complaint, Akzo Nobel N.V. manufactured, marketed or sold Hydrogen Peroxide in the United States and in this district through the control of its subsidiaries and affiliates, including defendants EKA and Akzo Nobel Inc.

(a)     According to securities filings, Akzo Nobel N.V. claims to be an international company active in the areas of pharmaceuticals, coatings and chemicals with operations in over 80 countries and about 66,000 employees.  It also claims to be one of the world's "leading chemicals producers."  Akzo Nobel N.V.'s Chemicals Group terms itself a "leading global supplier" of chemical products.

(b)     Akzo Nobel N.V. dominated and controlled the finances, policies and business practices of EKA and Akzo Nobel Inc. relating to the antitrust violations alleged in this Complaint which injured the plaintiffs.  Plaintiffs' claims arise out of Akzo Nobel N.V.'s contacts with this district, and Akzo Nobel N.V. knew, or had good reason to know, that its conduct would have effects in this district.

26.     Defendants EKA, Akzo Nobel Inc. and Akzo Nobel N.V. are collectively referred to herein as the "Akzo Defendants."

27.     Defendant Kemira Chemicals, Inc. ("Kemira Chemicals") is a Georgia corporation with its principal place of business in Kennesaw, Georgia.  Kemira Chemicals is a wholly-owned subsidiary of defendant Kemira Oyj.  Kemira Chemicals, its predecessors and

affiliates manufactured, marketed and sold Hydrogen Peroxide in the United States and in this district during the Class Period.

28.     Defendant Kemira Oyj ("Kemira") is a Finnish company with its principal place of business in Helsinki, Finland.  At times relevant to this Complaint, Kemira manufactured, marketed or sold Hydrogen Peroxide in the United States and in this district through control of its predecessors, subsidiaries or affiliates.

(a)     Kemira is one of the world's leading producers of Hydrogen Peroxide. Kemira identifies itself on its website as an "international chemical industry group that offers services to customers in, among others, the pulp and paper industry, water treatment and the paint business."  Kemira observes no distinction between it and its American subsidiary Kemira Chemicals.  It refers to its Helsinki, Finland office as the "headquarters" of its pulp and paper business (which includes its Hydrogen Peroxide operations), and Kemira Chemicals' Kennesaw, Georgia facilities as a mere "location" of Kemira Oyj.  This lack of distinction is especially pronounced as to its Hydrogen Peroxide business.  Kemira Chemicals' website asks users who seek information on its North American pulp and paper business to click on a hyperlink, which directs the user to Kemira' Oyj's website; no independent information on its North American Hydrogen Peroxide operations is maintained on Kemira Chemicals' website.

(b)     Kemira Oyj dominated and controlled the finances, policies and business practices of Kemira Chemicals relating to the antitrust violations alleged in this Complaint which injured the plaintiffs.  Plaintiffs' claims arise out of Kemira Oyj's contacts with this district, and Kemira Oyj knew, or had good reason to know, that its conduct would have effects in this district.

29.     Defendants Kemira Chemicals and Kemira are collectively referred to herein as the "Kemira Defendants."

30.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

## CO-CONSPIRATORS

31.     Various other persons, firms and corporations, not named as defendants in this Complaint, have participated as co-conspirators with defendants in the violations alleged herein, and have taken actions and made statements in furtherance of the conspiracy.

## INTERSTATE TRADE AND COMMERCE

32.     The activities of defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

33.     During the time period covered by this Complaint, defendants and their co-conspirators sold and distributed Hydrogen Peroxide throughout the United States.

34.     Defendants and their co-conspirators, and each of them, have used instrumentalities of interstate commerce to manufacture, sell, distribute and market Hydrogen Peroxide.

35.     Defendants and their co-conspirators have manufactured, sold and shipped substantial quantities of Hydrogen Peroxide in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which defendants produced Hydrogen Peroxide.

## THE HYDROGEN PEROXIDE INDUSTRY

36.     Hydrogen peroxide is an inorganic chemical compound ($H_2O_2$) and a colorless, syrupy liquid that is a strong oxidizing agent.  Hydrogen peroxide is purchased by the pulp and paper industry for bleaching pulp and paper, and is used as well as by textile and bleaching-related industries. Hydrogen peroxide is also used in the treatment of drinking water and industrial wastewater, and for chemical synthesis and other uses.

37.     Hydrogen peroxide is used to manufacture sodium percarbonate and sodium perborate.  Sodium percarbonate is sodium carbonate peroxyhydrate, and it is used in deck, carpet, household and laundry cleaning products.  Sodium perborate is used in automatic dishwashing and laundry powders as a hot water bleaching agent.

38.     The Hydrogen Peroxide industry has a number of structural characteristics that facilitate the implementation and maintenance of a horizontal price-fixing conspiracy such as that alleged by plaintiffs herein, specifically:

(a)     Hydrogen Peroxide is sold in various grades, and each grade is available in different concentrations.  Hydrogen Peroxide is a commodity product that is fungible among grades.  Hydrogen Peroxide is a highly homogeneous product that is sold by defendants and purchased by plaintiffs and members of the Classes primarily on the basis of price.

(b)     The Hydrogen Peroxide industry in the United States is highly concentrated, facilitating coordination of Hydrogen Peroxide prices among the major manufacturers thereof.  Indeed, during the relevant time period, defendants accounted for virtually all Hydrogen Peroxide production in the United States.

(c)     There are substantial barriers to new entry in the Hydrogen Peroxide industry.  Indeed, *de novo* entry or fringe expansion into the industry would require a substantial

sunk investment and a significant period of time, such that new entry would be neither timely, likely, nor sufficient to restrain incumbent producers. In addition, the minimum viable scale of a Hydrogen Peroxide production facility, which is necessary to ensure a reasonable rate of return and to deter or counteract potential anticompetitive effects, likely precludes new entry. Because economic entry would require that a new producer capture a significant market share from existing producers and the costs of such entry would be sunk, such entry is inherently risky. Furthermore, overcapacity, as well as announced expansions by existing producers, served as additional deterrents to new entry during the Class Period.

39.     Defendants' senior-most executives, including many with pricing authority relating to Hydrogen Peroxide, met regularly throughout the Class Period to discuss matters of mutual interest at meetings of the Chemical Manufacturers' Association ("CMA"), now known as the American Chemistry Council ("ACC"). Attendees at these meetings included:

(a)     FMC: William Walter, William Harvey, Daniel Summers, Michael Smith, Lynda Myrick and Joseph Cipia;

(b)     Degussa Defendants: Richard Owens;

(c)     Solvay Defendants: Gary Hall (President) and Whit Sadler (CEO);

(d)     Atofina Defendants: Billy Tulos (Business Manager for Chloralkali and Oxygenated Products);

(e)     Akzo Defendants: Dag Stromquist (President); and

(f)     Kemira Defendants: Risto Ojola (President); Robert Scanlon (Vice-President); and Seth Spurlock (President and CEO).

40.     These meetings and others attended by high level officials with Hydrogen Peroxide pricing authority were often followed, sometimes in a matter of days, by uniform,

industry-wide price increases by all defendants in identical amounts at various times throughout the Class Period. For example, in late October, 2002, the ACC's "leadership" group met in Houston, Texas. At or about that time, each defendant announced an increase in Hydrogen Peroxide by an identical $.03 per pound.

41.     Similar instances of high level trade association meetings attended by high level personnel with hydrogen peroxide pricing authority, followed within days by uniform, industry-wide price increases by all defendants, occurred at various time throughout the Class Period.

42.     In addition to these meetings, the defendants throughout the Class Period employed mechanisms to monitor and mutually enforce their coordinated pricing actions by engaging in the highly questionable practice of issuing press releases to pre-announce their pricing intentions not in targeted mailings directed to their own customers but broadly and publicly to each others' customers.  This practice is conducive to effective price coordination and collusion.

43.     As a result of defendants' anti-competitive activity, the market price at which defendants sold Hydrogen Peroxide to members of the Classes remained at anti-competitive levels notwithstanding the fact that there was substantial over-capacity for Hydrogen Peroxide production.

## VIOLATIONS ALLEGED

44.     Beginning at least as early as January 1, 1994 and continuing until January 5, 2005, defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize prices of, to control and restrict output for, and to allocate markets and customers for, Hydrogen Peroxide in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The contract,

combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and their co-conspirators, the substantial terms of which were to fix, raise and maintain, or stabilize of, to control and restrict output for, and to allocate markets and customers for, Hydrogen Peroxide in the United States.

45.     In formulating and effectuating the aforesaid contract, combination or conspiracy, defendants and their co-conspirators did those things that they combined and conspired to do, including, among other things:

     (a)     communicating with each other regarding prices to be charged for Hydrogen Peroxide;

     (b)     agreeing to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize prices of Hydrogen Peroxide sold in the United States;

     (c)     exchanging information on prices and sales volumes;

     (d)     allocating markets and customers;

     (e)      agreeing on the reduction of production capacity;

     (f)     monitoring and implementing the arrangements among cartel members; and

     (g)     selling Hydrogen Peroxide at agreed-upon prices.

46.     The activities described above have been engaged in by defendants and their co-conspirators for the purpose of effectuating the unlawful arrangements to fix, maintain, raise or stabilize prices of Hydrogen Peroxide.

47.     Defendants' anti-competitive agreement was implemented by, *inter alia*, a series of coordinated price increase announcements that began in or about 1994. These coordinated price increases have continued on a regular basis through January 5, 2005, with the actual and

intended results that plaintiffs and members of the Classes have paid supra-competitive prices for Hydrogen Peroxide for over a decade.  Non-exclusive examples of these coordinated price increases are as follows:

(a)     In November 2002, all six producers selling in the United States announced a virtually simultaneous industry-wide price increase of 3 cents per pound on hydrogen peroxide. In a conference call with stock analysts on October 30, 2002, FMC chairman and CEO William Walter stated: "We are in the process of implementing those price increases . . . . It is premature to comment about the receptivity out there.  We have had support from the other competitors . . "

(b)     In March and April 2003, the producers again announced either energy surcharges or price increases of 5 cents per pound on hydrogen peroxide to be implemented in April and May 2003.

48.     Similar price increases, in identical amounts and within close temporal proximity, were announced by defendants at various times throughout the relevant time period.

### CRIMINAL INVESTIGATIONS AND OTHER PROCEEDINGS RELATING TO COLLUSION IN THE HYDROGEN PEROXIDE INDUSTRY

49.     The Antitrust Division of the United States Department of Justice is conducting a criminal investigation of defendants and alleged anti-competitive activity concerning the pricing of Hydrogen Peroxide, and defendants have acknowledged that a federal grand jury has been convened and is taking evidence in connection therewith.

50.     The European Commission has formally charged defendants FMC, Total S.A., Kemira , Solvay S.A., Degussa A.G., and Akzo Nobel N.V with fixing prices of hydrogen peroxide and downstream products sodium perborate and sodium percarbonate.

51.     According to news reports, defendant Degussa A.G. "blew the whistle" on the cartel and may receive immunity or leniency from criminal fines and other governmental and

regulatory penalties both in the United States and abroad. Such amnesty from criminal

prosecution and further regulatory enforcement requires a full confession of wrongful complicity

in a price-fixing conspiracy and testimony and other evidence as to the complicity of others in

the alleged antitrust conspiracy.

## FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

52.     Plaintiffs had no knowledge of the unlawful self-concealing conspiracy alleged in

this Complaint and could not have discovered the contract, combination or conspiracy at an

earlier date by the exercise of due diligence because of the deceptive practices and techniques of

secrecy employed by defendants to avoid detection of, and fraudulently conceal, their contract,

combination or conspiracy as alleged in this Complaint, until approximately January 5, 2005,

when defendants for the first time disclosed that they had been charged by the European

Commission with collusion with respect to the pricing and marketing of Hydrogen Peroxide in

Europe, and approximately a month later that a federal grand jury had been empanelled to

conduct a criminal price-fixing investigation of defendants' activities in the United States. Prior

to that time, defendants represented publicly, both to their customers and otherwise, that their

pricing activities relating to Hydrogen Peroxide were unilateral, rather than collusive, and based

upon legitimate factors, such as increased costs and other free market considerations. By so

representing, the defendants misled plaintiffs and members of the Classes as to the true, collusive

and coordinated nature of the pricing and other illegal and anti-competitive activities. The

defendants also made numerous public pronouncements characterizing the Hydrogen Peroxide

market as highly competitive.

53.   Because the contract, combination or conspiracy was kept secret by defendants, plaintiffs were unaware of the fact that prices of Hydrogen Peroxide were secretly agreed upon as alleged herein.

54.   Plaintiffs and other members of the Classes could not have discovered the contract, combination or conspiracy at an earlier date through the exercise of due diligence at any earlier time because of the deceptive practices and techniques of secrecy employed by defendants and their co-conspirators to avoid detection of, and conceal, their contract, combination or conspiracy. Moreover, while plaintiffs have diligently sought to protect themselves from unlawful activity, plaintiffs were unable to detect the above-described secret activity, which by its nature is self-concealing. Accordingly, the statute of limitations has been tolled and suspended with respect to any and all claims arising from the conspiracy until not earlier than January 5, 2005.

<u>EFFECTS</u>

55.   The unlawful contract, combination or conspiracy has had the following effects, among others:

(a)   prices charged by defendants and their co-conspirators to plaintiffs and the members of the Classes for Hydrogen Peroxide were maintained at artificially high and non-competitive levels; and

(b)   plaintiffs and members of the Classes had to pay more for Hydrogen Peroxide than they would have paid in a competitive marketplace unfettered by defendants' and their co-conspirators' collusive and unlawful price-fixing.

56.     As a direct and proximate result of the illegal combination, contract or conspiracy, plaintiffs and members of the Classes have been injured and financially damaged in their respective businesses and property in amounts which are presently undetermined.

## CLASS ACTION ALLEGATIONS

57.     The Private Plaintiffs bring this action on their own behalf, and pursuant to Fed.R.Civ.P. 23(a) and (b)(3), on behalf of the following Class (the "Private Class"):

> All persons (excluding governmental entities, defendants, co-conspirators, other producers of Hydrogen Peroxide, and their parents, predecessors, successors, subsidiaries and affiliates) who purchased Hydrogen Peroxide in the United States, its territories and possessions, or from a facility located in the United States, its territories and possessions, directly from any of the defendants, or any of their parents, predecessors, successors, subsidiaries and affiliates, at any time during the period from January 1, 1994 until January 5, 2005.

58.     The Governmental Plaintiffs bring this action on their own behalf, and as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(3), on behalf of the following class (the "Governmental Class"):

> All governmental entities who purchased Hydrogen Peroxide in the United States, its territories and possessions, or from a facility located in the United States, its territories and possessions, directly from any of the defendants, or any of their parents, predecessors, successors, subsidiaries and affiliates, at any time during the period from January 1, 1994 until January 5, 2005.

59.     The Private Class and the Governmental Class are collectively referred to as the "Classes" in this Complaint.

60.     Plaintiffs believe that there are hundreds, if not thousands, of members of the Classes, as above described, the exact number and their identities and addresses being known by defendants and reflected in defendants' records.

61.     The members of the Classes are so numerous and geographically dispersed that joinder of all members in impracticable.

62.     There are questions of law and fact common to the Classes, including the following:

(a)     Whether defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices, allocate customers and markets, and control and restrict output of Hydrogen Peroxide sold in the United States;

(b)     The identity of the participants in the conspiracy;

(c)     The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

(e)     Whether the conduct of defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of plaintiffs and other members of the Classes;

(f)     The effect of defendants' conspiracy on the prices of Hydrogen Peroxide during the Class Period; and

(g)     The appropriate measure of damages sustained by plaintiffs and other members of the Classes.

63.     Plaintiffs' claims are typical of the claims of the Classes they seek to represent, and plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs' interests are coincident with and not antagonistic to those of the other members of the

Classes they seek to represent. In addition, plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

64. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

65. The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

66. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The members of the Classes are readily definable and is one for which records should exist in the files of defendants and their co-conspirators. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiffs, on their own behalf and on behalf of the Classes, demand a trial by jury of all claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray as follows:

(a)     That the Court determine that this action may be maintained as a class action on behalf of the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure.

(b)     That the contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

(c)     That judgment be entered for plaintiffs and members of the Classes against defendants for three times the amount of damages sustained by plaintiffs and the Classes as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

(d)     That plaintiffs and members of the Classes be awarded pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law.

(e)     That plaintiffs and members of the Classes have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: April 29, 2005

BOLOGNESE & ASSOCIATES LLC


By: _Anthony J. Bolognese_____
Anthony J. Bolognese
Joshua H. Grabar
Andrew B. Bullion
1617 JFK Blvd., Suite 650
Philadelphia, PA 19103
Telephone: (215) 814-6750
Facsimile: (215) 814-6764

Michael D. Hausfeld
Agnieszka Fryszman
Reena Gambhir
COHEN MILSTEIN HAUSFELD
   & TOLL, PLLC
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

   -and-

Linda Nussbaum
COHEN MILSTEIN HAUSFELD
   & TOLL, LLC
150 East 52nd Street
Thirtieth Floor
New York, NY  10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

Robert N. Kaplan
Gregory Arenson
Jason Zweig
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY  10022
(212) 687-1980
(212) 687-7114 (fax)

Steven A. Kanner
Harvey J. Barnett
William H. London
Douglas A. Millen
MUCH SHELIST FREED DENENBERG
   AMENT & RUBENSTEIN, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone: (312) 521-2000
Facsimile: (312) 521-2100

**Interim Co-Lead Counsel for Plaintiffs
and the Classes, and Principal Counsel
for Various Plaintiffs**

H. Laddie Montague, Jr.
Ruthanne Gordon
Bart Cohen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3010
Facsimile: (215) 875-4604

- and –

Kenneth Trujillo
Ira Neil Richards
TRUJILLO RODRIGUEZ
    & RICHARDS, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103
Telephone: (215) 731-9004
Facsimile: (215) 731-9044

-and-

Joseph C. Kohn
William Hoese
Hillary Cohen
KOHN, SWIFT & GRAF, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

**Attorneys for Governmental Plaintiff City
of Philadelphia**

Joseph C. Kohn
William Hoese
Hillary Cohen
KOHN, SWIFT & GRAF, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

- and -

Thomas L. Wenger
WIX, WENGER & WEIDNER
508 North Second Street
Harrisburg, PA 17101
Telephone: (717) 234-4182

**Attorneys for Plaintiffs Borough of
Middletown, and Middletown Borough
Authority and the Proposed Government
Class**

**Additional Plaintiffs' Counsel:**

Arthur N. Bailey
ARTHUR N. BAILEY & ASSOCIATES
111 West Second Street, Suite 4500
Jamestown, NY 14701
Telephone: (716) 664-2967
Facsimile: (716) 664-2983
**Attorneys for Plaintiffs Finch Pruyn and
Company, Inc.**

Steven A. Asher
WEINSTEIN, KITCHENOFF & ASHER
LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 545-7200
Facsimile: (215) 545-6535
**Attorneys for Plaintiff Ohio Chemical
Services, Inc.**

Howard J. Sedran
Austin Cohen
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
**Attorneys for Plaintiff Astro Chemicals,
Inc.**

Roberta D. Liebenberg

FINE KAPLAN & BLACK, R.P.C.
1845 Walnut Street, Suite 2300
Philadelphia, PA  19103
(215) 567-6565
(215) 568-5872 (fax)
**Attorneys for Plaintiff Astro Chemicals,
Inc.**

Marc H. Edelson
EDELSON & ASSOCIATES, LLC
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735
**Attorneys for Plaintiff James R. Pacific
(as successor in interest to Eagle
Chemical Co.)**

Christy Adams
LAW OFFICES OF CHRISTY ADAMS
2 Penn Center
1500 JFK Blvd., Suite 711
Philadelphia, PA  19102
Telephone: (215) 546-4208
Facsimile: (215) 546-1336
**Attorneys for Plaintiff James R. Pacific
(as successor in interest to Eagle
Chemical Co.)**

Steven Greenfogel
MEREDITH COHEN GREENFOGEL &
SKIRNICK, PC
22nd Floor, Architects Bldg.
117 South 17th Street
Philadelphia, PA  19103
Telephone: (215) 564-5182
Facsimile: (215) 569-0958
**Attorneys for Plaintiff EMCO Chemical
Distributors, Inc.**

Michael P. Lehmann
Thomas Dove
THE FURTH FIRM
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 433-2070
Facsimile: (415) 982-2076
**Attorneys for Plaintiff EMCO Chemical
Distributors, Inc.**

Andrew B. Sacks
John Weston
SACKS AND WESTON
510 Walnut Street, Suite 400
Philadelphia, PA 19106
Telephone: (215) 925-8200
Facsimile: (215) 925-0508
**Attorneys for Plaintiff EMCO Chemical
Distributors, Inc.**

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
**Attorneys for Plaintiffs EMCO Chemical
Distributors, Inc., and Lincoln Paper &
Tissue, LLC**

David R. Schaefer
BRENNER, SALTZMAN & WALLMAN
LLP
271 Whitney Avenue, P.O. Box 1746
New Haven, CT 06507-1746
Telephone: (203) 772-2600
Facsimile: (203) 562-2098
**Attorneys for Plaintiff EMCO Chemical
Distributors, Inc.**

Jonathan E. Walner
HARVEY L. WALNER & ASSOCIATES,
LTD.
123 North Wacker Drive, Suite 880
Chicago, IL  60606
Telephone: (312) 782-8550
Facsimile: (312) 782-2646
**Attorneys for Plaintiff EMCO Chemical**
**Distributors, Inc.**

Eugene A. Spector
Jay S. Cohen
SPECTOR, ROSEMAN & KODROFF
1818 Market Street
Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
**Attorneys for Plaintiff Chem/Serv, Inc.**

Jeffrey A. Brodkin
LAW OFFICES OF JEFFREY BRODKIN
1845 Walnut Street, 22nd Floor
Philadelphia, PA  19103
Telephone: (215) 567-1234
Facsimile: (215) 569-0809
**Attorneys for Plaintiff Chem/Serv, Inc.**

Philip A. Steinberg
124 Rockland Avenue
Bala Cynwyd, PA  19004
Telephone: (610) 664-0972
Facsimile: (610) 664-3101
**Attorneys for Plaintiff Chem/Serv, Inc.**

John P. McCarthy
217 Bay Avenue
Somers Point, NJ  08224
Telephone: (609) 653-1094
**Attorneys for Plaintiff Chem/Serv, Inc.**

Warren Rubin
LAW OFFICES OF BERNARD M.
GROSS, P.C.
1515 Locust Street, 2nd Floor
Philadelphia, PA  19102
Telephone: (215) 561-3600
Facsimile: (215) 561-3000
**Attorneys for Plaintiff Lincoln Paper &
Tissue, LLC**

Gerald J. Rodos
Jeffrey B. Gittleman
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
**Attorneys for Plaintiff Lincoln Paper &
Tissue, LLC**

Stanley M. Grossman
POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS, LLP
100 Park Avenue
New York, NY  10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
**Attorneys for Plaintiff Safer Textile
Processing Corp.**

James O. Reavis
REAVIS & HASKELL, LLC
55 Dorrance Street, Suite 200
Providence, RI  02903
Telephone: (401) 272-5520
Facsimile: (401) 272-5501
**Attorneys for Plaintiff Roberts Chemical
Company, Inc.**

Jeffrey A. Klafter
KLAFTER & OLSEN LLP
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10602
Telephone: (914) 997-5656
Facsimile: (914) 997-2444
**Attorneys for Plaintiff Roberts Chemical
Company, Inc.**

Kurt B. Olsen
KLAFTER & OLSEN LLP
2121 K Street, N.W.
Washington, DC 20037
Telephone: (202) 261-3553
Facsimile: (202) 261-3533
**Attorneys for Plaintiff Roberts Chemical
Company, Inc.**

Seth R. Lesser
LOCKS LAW FIRM, PLLC
110 East 55th Street
New York, NY 10019
Telephone: (212) 838-3333
Facsimile: (212) 838-9760
**Attorneys for Plaintiff Roberts Chemical
Company, Inc.**

Ellen Meriwether
MILLER FAUCHER
  AND CAFFERTY LLP
One Logan Square, Suite 1700
Philadelphia, PA 19103
Telephone: (215) 864-2800
Facsimile: (215) 864-2810
**Attorneys for Plaintiff Atlantis Caribbean
Chemical Corp.**

Bernard Persky
GOODKIND LABATON RUDOFF
  & SUCHAROW LLP
100 Park Avenue
New York, NY 10017
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
**Attorneys for Plaintiff Atlantis Caribbean
Chemical Corp.**

Kevin B. Love
HANZMAN & CRIDEN, P.A.
220 Alhambra Circle
Suite 400
Coral Gables, FL  33134
Telephone: (305) 357-9000
Facsimile: (305) 357-9050
**Attorneys for Plaintiff Atlantis Caribbean**
**Chemical Corp.**

Mark S. Goldman
GOLDMAN SCARLATO & KARON, P.C.
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
Telephone: (215) 545-7200
Facsimile: (215) 545-6535

Daniel R. Karon
GOLDMAN SCARLATO & KARON, P.C.
55 Public Square, Suite 1500
Cleveland, OH  44113
Telephone: (216) 622-1851
Facsimile: (216) 622-1852
**Attorneys for Plaintiffs Borden &**
**Remington Corp., Young Chemical**
**Company, and Interstate Chemical**
**Chemical Company**

Samuel D. Heins
Vincent J. Esades
Matthew W. Ruan
HEINS MILLS & OLSON, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**Attorneys for Plaintiff Young Chemical**
**Company**

Mark Reinhardt
Garrett D. Blanchfield, Jr.
REINHARDT WENDORF
   & BLANCHFIELD
E-1250 First National Bank Bldg.
332 Minnesota St.
St. Paul, MN  55101
Telephone: (651) 287-2100
Facsimile: (651) 287-2103
**Attorneys for Plaintiff Standard
Technology Applied Resources, Inc.**

Anthony D. Shapiro
HAGENS BERMAN
1301 Fifth Avenue
Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
**Attorneys for Plaintiff Standard
Technology Applied Resources, Inc.**

Eric Belfi
Murray Frank & Sailer
275 Madison Avenue
New York, NY  10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892
**Attorneys for Plaintiff Standard
Technology Applied Resources, Inc.**

Gary B. Friedman
Friedman & Shube
155 Spring Street
New York, NY  10012
Telephone: (212) 680-5150
Facsimile: (212) 219-6446
**Attorneys for Plaintiff Standard
Technology Applied Resources, Inc.**

John Cochrane
Cochrane & Bresnahan, P.A.
24 East 4th Street
St. Paul, MN  55101-1099
**Attorneys for Plaintiff Standard
Technology Applied Resources, Inc.**

## **CERTIFICATE OF SERVICE**

I, Anthony J. Bolognese, one of the attorneys for plaintiffs, hereby certify that on this

29th day of April, 2005, a copy of the accompanying Consolidated Amended Class Action

Complaint was filed of record by way of the Court's electronic filing program, and was served by

e-mail upon all defendants' counsel of record, as identified on the accompanying service list.


_____
Anthony J. Bolognese

### *List of Defendants' Counsel/Eastern District of Pennsylvania*

Nancy J. Gellman
Conrad O'Brien Gellman & Rohn, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102
Telephone: (215) 864-8065
Facsimile: (215) 864-9620

Daniel G. Swanson
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-6430

Stephen C. McKenna
Monica Loseman
Gibson, Dunn & Crutcher LLP
1801 California St., Suite 4200
Denver, CO  80202-2641
Telephone: (303) 298-5700
Facsimile: (303) 296-5310

**Counsel for Defendants Akzo Nobel Chemicals International B.V. and Akzo Nobel, Inc. and EKA Chemicals, Inc.**

Howard D. Scher
Steven E. Bizar
Eliot G. Long
Buchanan Ingersoll PC
1835 Market Street, 14th Floor
Philadelphia, PA  19103
Telephone: (215) 772-8700
Facsimile: (215) 772-8760

**Counsel for Defendant Arkema Inc., Atofina Chemicals, Inc.**

Richard G. Parker
Michael E. Antalics
Karin F.R. Moore
Hima Vatti
Laura M. Kam
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC  20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

**Counsel for Defendant Degussa Corporation**

Joseph A. Tate
Christine C. Levin
George G. Gordon
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103-2793
Telephone: (215) 994-4000
Facsimile: (215) 994-2222

**Counsel for Defendant FMC Corporation**

Jeffrey S. Cashdan
Stephen P. Cummings
King & Spalding LLP
191 Peachtree Street
Atlanta, GA  30303-1763
Telephone: (404) 572-4600
Facsimile: (404) 572-5141

Barbara W. Mather
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

**Counsel for Defendant Kemira Chemicals, Inc.**

Steven W. Thomas
Adam S. Paris
Amanda C. Denaro
Sullivan & Cromwell
1888 Century Park East
Los Angeles, CA  90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

Alan J. Davis
Burt M. Rubin
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Telephone: (215) 665-8500
Facsimile: (215) 864-8999

**Counsel for Defendants Solvay America, Inc., Solvay Chemicals, Inc. and Solvay Interox, Inc.**