# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: HYDROGEN PEROXIDE ANTITRUST LITIGATION | Civil Action No. 05-666 |
| | MDL Docket No. 1682 |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER ACTIONS | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENTS BETWEEN CLASS PLAINTIFFS AND DEFENDANTS ARKEMA, INC., AND ARKEMA FRANCE, AND BETWEEN CLASS PLAINTIFFS AND FMC CORPORATION**

| | |
|---|---|
| Michael D. Hausfeld<br>William P. Butterfield<br>Reena Armillay Gambhir<br>**HAUSFELD LLP**<br>1700 K St. NW, Suite 650<br>Washington, D.C. 20006<br>Telephone: (202) 540-7200<br>Facsimile: (202) 540-7201 | Steven Kanner<br>William H. London<br>Douglas A. Millen<br>**FREED KANNER LONDON AND MILLEN LLC**<br>2201 Waukegan Road, Suite 130<br>Bannockburn, IL 60015<br>Telephone: (312) 521-2000<br>Facsimile: (312) 521-2100 |
| Anthony Bolognese<br>Joshua H. Grabar<br>**BOLOGNESE & ASSOCIATES**<br>Two Penn Center<br>1500 JFK Boulevard<br>Suite 320<br>Philadelphia, PA 19102<br>Telephone: (215) 814-6750<br>Facsimile: (215) 814-6764 | Robert N. Kaplan<br>Gregory Arenson<br>Jason Zweig<br>**KAPLAN FOX & KILSHEIMER LLP**<br>850 Third Avenue, 14th Floor<br>New York, NY 10022<br>(212) 687-1980<br>(212) 687-7114 (fax) |

Class Counsel

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................... 2

II.   BACKGROUND ................................................................................. 4

      A.    The Litigation.......................................................................... 4

III.  PROVISIONS OF THE SETTLEMENT AGREEMENTS ................................. 5

      A.    The Settlement Class................................................................. 5

      B.    Release Provisions ................................................................... 6

      C.    Cooperation Provision in the Arkema Settlement Agreement.................. 6

      D.    The FMC Settlement Amount...................................................... 7

IV.   THE PROPOSED SETTLEMENTS ARE WITHIN THE RANGE OF
      POSSIBLE APPROVAL AS FAIR, REASONABLE, AND ADEQUATE......... 9

      A.    Standard for Granting Preliminary Approval ............................... 9

      B.    The Negotiation Process with Arkema and FMC Supports
            Preliminary Approval of Each Settlement ................................. 11

      C.    The Proposed Settlements Achieve a Fair and Reasonable Result
            for the Class, Particularly Given the Expense, Duration, and
            Uncertainty of Continued Litigation As Against Arkema and FMC....... 13

      D.    The Arkema Settlement's Cooperation Provisions Support a
            Finding that the Settlement is Fair, Reasonable, and Adequate ............. 15

      E.    The FMC Settlement Amount and Opt-Out Reduction is Fair,
            Reasonable, and Adequate .................................................... 16

            1.    The Settlement Amount Constitutes Substantial
                  Compensation to the Settlement Class....................... 17

            2.    The Provision for an Opt-Out Reduction in the FMC
                  Settlement is Fair, Reasonable, and Adequate to the
                  Settlement Class.................................................... 17

V.    THE FORMS OF NOTICE SHOULD BE APPROVED FOR BOTH THE
      ARKEMA AND FMC SETTLEMENTS ........................................... 18

VI.   CERTIFICATION OF THE PROPOSED ARKEMA AND FMC
      SETTLEMENT CLASSES IS WARRANTED ................................... 23

VII.  CLASS COUNSEL'S PROPOSED DISTRIBUTION OF THE
      APPROVED SETTLEMENT FUNDS IS SUFFICIENTLY
      REASONABLE AND FALLS WITHIN THE RANGE OF POSSIBLE
      APPROVAL .......................................................................... 24

VIII.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR
        ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FOR
        THE FMC SETTLEMENT.................................................................................. 26

IX.     PROPOSED TIMING...................................................................................... 29

X.      CONCLUSION................................................................................................ 30

## Table of Authorities

CASES

*Austin v. Pa. Dep't of Corr.*,
  876 F. Supp. 1437 (E.D. Pa. 1995) ...................................................................................11

*Boeing v. Van Gemert*,
  444 U.S. 472 (1980)............................................................................................26, 28

*Central Railroad & Banking Co. of Georgia v. Pettus*,
  113 U.S. 116 (1885)....................................................................................................28

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................................................17

*Cullen v. Whitman Medical Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)..................................................................................27

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................................15

*Eisen v. Carlisle & Jacquelin*,
  479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974)...............14, 21

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)........................................................................................10

*Godshall v. Franklin Ming Co.*,
  2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ...............................................................27

*Goldberger v. Integrated Resources, Inc.*
  209 F.3d 43 (2d Cir. 2000)..........................................................................................28

*Hall v. Cole*,
  412 U.S. 1 (1973)........................................................................................................28

*Hanrahan v. Britt*,
  174 F.R.D. 356 (E.D. Pa. 1997)..................................................................................11

*In re Aetna, Inc., Sec. Litig.*,
  2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ....................................................................26

*In re ATI Technologies, Inc. Sec. Litig.*,
  2003 WL 1962400 (E.D. Pa. Apr. 28, 2004) .......................................................26, 27

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) .............................................................11

*In re Auto. Refinishing Paint Antitrust Litig.*,
2004 WL 1068807 (E.D. Pa. May 11, 2004) ......................................................9, 16

*In re Automotive Refinishing Paint Antitrust Litig.*,
2004 U.S. Dist. LEXIS 29162 (E.D. Pa. 2004) ..........................................................27

*In re Cendant Corp., Litig.*,
264 F.3d 201 (3d Cir. 2001)......................................................................................25

*In re Chambers Dev. Securities Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995)......................................................................10, 14

*In re Computron Software, Inc.*,
6 F.Supp.2d 313 (D.N.J. 1998).........................................................................25, 26

*In Re Corrugated Container Antitrust Litig.*,
1981 WL 2093 (S.D. Tex. June 4, 1981) .................................................................16

*In re Corel Corp. Sec. Litig.*,
293 F.Supp.2d 484 (E.D. Pa. 2003) .........................................................................26

*In re Ethylene Proplene Diene Monomer Antitrust Litig.*,
Civil Action No. 3:03MD1542 (D.Conn.) ......................................8, 17, 18, 21, 29

*In re FAO, Inc. Sec. Litig.*,
2005 U.S. Dist. Lexis 16577 (E.D. Pa. May 20, 2005).............................................27

*In re General Instrument Sec. Litig.*,
206 F.Supp.2d 423 (E.D. Pa. 2001) ..........................................................................27

*In re General Motors Corp.*,
55 F.3d 768 (3d Cir. 1995)................................................................................10, 11

*In re Greenwich Pharm. Sec. Litig.*,
1995 WL 251293 (E.D. Pa. Aug. 26, 1995) ............................................................27

*In re Hydrogen Peroxide Antitrust Litig.*,
522 F.2d 305 (3d Cir. 2008).....................................................................................24

*In re Ikon Office Supplies Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).......................................................................16, 25

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ...........................................................10, 11, 12, 27

*In re Linerboard Antitrust Litig.*,
333 F.Supp.2d 343 (E.D. Pa. 2004) ..........................................................................28

iv

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004) .........................................................27

*In re Lucent Technologies*, Inc. Sec. Litig.,
   307 F.Supp.2d 633 (D.N.J. 2004) ......................................................................26

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................14

*In re Mid-Atlantic Toyota Antitrust Litig.*,
   564 F. Supp. 1379 (D.C. Md. 1983) ..........................................................10, 16

*In Re NASDAQ Market-Makers Antitrust Litig.*
   187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................14

*In re OSB Antitrust Litig.*,
   Civil Action No. 2:06-cv-00826-PD, Docket Nos. 940-944 (E.D. Pa. Dec. 9,
   2008) .........................................................................................................8, 18

*In re Paine Webber Ltd., Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y 1997) ......................................................................26

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)..........................................................10, 19, 20, 21

*In re Prudential Ins. Co. of America Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ........................................................................9

*In re Ravisent Tech., Inc., Sec. Litig.*,
   2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ......................................................27

*In re Remeron Direct Purchaser Antitrust Litig.*,
   2005 WL 3008808 (D.N.J. Nov. 9, 2005) ..................................................26, 27

*In re Remeron End-Payor Antitrust Litig.*,
   2005 U.S. Dist Lexis 27011 (D.N.J. Sept. 13, 2005)..........................................21

*In re Rent-Way Sec. Litig.*,
   305 F.Supp.2d 491 (W.D. Pa. 2003)................................................................26

*In re Residential Doors Antitrust Litig.*,
   1998 WL 151804 (E.D. Pa. Apr. 2, 1998) ........................................................28

*In re Rite Aid Corp. Securities Litig.*,
   362 F.Supp.2d 587 (E.D. Pa. 2005) ..........................................................26, 27

*In re Rite Aid Corp. Sec. Litig.*,
   146 F.Supp.2d 706 (E.D. Pa. 2001) ................................................................10

*In re School Asbestos Litig.*,
    921 F.2d 1330 (3d Cir. 1990)........................................................................................17

*In re Traffic Executive Ass'n – Eastern Railroads*,
    627 F.2d 631 (2d Cir. 1980)..........................................................................................10

*In re U.S. Bioscience Sec. Litig.*,
    155 F.R.D. 116 (E.D. Pa. 1994)...............................................................................26, 27

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y 2003) ...........................................................................15

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).........................................................................................11

*In re Warfarin Sodium Antitrust Litigation*,
    212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004)..............................21, 22

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ........................................................................................29

*In re Worldcom Inc. Securities Litig.*
    2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)..............................................................22

*Internal Improvement Fund Trustees v. Greenough*,
    105 U.S. 527 (1881*)*..............................................................................................28, 29

*Jaffe v. Morgan Stanley & Co.*,
    2005 U.S. Dist. Lexis 12208 (N.D. Cal. Feb. 7, 2008).................................................21

*Lake v. First Nationwide Bank*,
    156 F.R.D. 615 (E.D. Pa. 1994)....................................................................................11

*Lazy Oil, Co. v. Witco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997).............................................................................17

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................................15

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) .........................................................................................29

*Martens v. Smith Barney, Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) ..................................................................................12

*MCI Commc'ns Corp., v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1982) ......................................................................................14

*Meijer v. 3M*,
 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ....................................................8, 18, 21, 26, 27

*Mills v. Electronic Auto-Lite Co.*,
 396 U.S. 375 (1970)................................................................................................28

*Nichols v. Smithkline Beecham Corp.*,
 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ..........................................................19

*Perry v. FleetBoston Fin. Corp.*,
 229 F.R.D. 105 (E.D. Pa. 2005)............................................................................13

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
 904 F.2d 1301 (9th Cir. 1990) ..............................................................................29

*Sprague v. Ticonic National Bank*,
 307 U.S. 161 (1939)................................................................................................28

*States of New York and Maryland v. Nintendo of Am., Inc.*,
 775 F. Supp. 676 (S.D.N.Y. 1991) ........................................................................15

*Tourangeau v. Uniroyal, Inc.*,
 1987 WL 54374 (D. Conn. Mar. 3, 1987) ..............................................................19

*United States Football League v. Nat'l Football League*,
 644 F. Supp. 1040 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988) ............14

*Van Gemert v. Boeing Co.*,
 590 F.2d 433 (2d Cir. 1978) ..................................................................................28

*Vincent v. Hughes Air West, Inc.*
 557 F.2d 759, 769 (9th Cir. 1977) ........................................................................29

*Walsh v. Great Atlantic & Pacific Tea Co., Inc.*,
 726 F.Supp. 965 (3d Cir. 1983) ............................................................................10

*Waters v. International Precious Metals Corp.*,
 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223 (2000) ....................29

*Williams v. MGM-Pathe Communications Co.*,
 129 F.3d 1026 (9th Cir. 1997) ..............................................................................29

*W. Va. v. Chas. Pfizer & Co.*,
 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ..............14

*Weseley v. Spear, Leeds & Kellogg*,
 711 F. Supp. 713 (E.D.N.Y. 1989) ........................................................................13

STATUTES

Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.* ..................................................................................4


OTHER AUTHORITIES

*4 Newberg on Class Actions* §11:25 (4th ed. 2000)......................................................................9

5 *Moore's Federal Practice* (3d Ed. 2003).................................................................................21

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

*Manual For Complex Litigation (Fourth)* § 21.632 (2004)............................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: HYDROGEN PEROXIDE ANTITRUST LITIGATION** | **Civil Action No. 05-666** |
| | **MDL Docket No. 1682** |
| **THIS DOCUMENT RELATES TO: DIRECT PURCHASER ACTIONS** | **CLASS ACTION** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF THE PROPOSED SETTLEMENT BETWEEN
CLASS PLAINTIFFS AND DEFENDANTS ARKEMA, INC., ARKEMA FRANCE, AND
<u>FMC CORPORATION</u>**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff class representatives (collectively, "Plaintiffs") respectfully submit this memorandum in support of their Motion for Preliminary Approval of the Proposed Settlement between Plaintiffs and Defendants Arkema, Inc. and Arkema France (collectively, "Arkema"), and between Plaintiffs and FMC Corporation ("FMC").

After four years of hard fought litigation, extensive fact and expert discovery, other pretrial proceedings, and arm's-length negotiations among experienced counsel fully aware of the strengths and weaknesses of their respective claims and defenses mediated with the benefit of the close, skilled and invaluable assistance of Honorable Magistrate Judge Jacob Hart, Class Plaintiffs have reached proposed settlements with Arkema and FMC, the last of the remaining defendants. If approved by the Court, these proposed settlements will bring an end to the hydrogen peroxide class action litigation, which has already resulted in substantial Court-approved final recoveries in the face of vigorous opposition by skilled and sophisticated defense counsel.

Plaintiffs' settlements with Arkema and FMC are the final two settlements in this litigation. Plaintiffs' settlement with Arkema is memorialized in the Settlement Agreement executed January 28, 2009 (the "Arkema Settlement Agreement"), a copy of which is attached hereto as Exhibit A. Plaintiffs' settlement with FMC is memorialized in the Settlement Agreement executed on April 15, 2009 (the "FMC Settlement Agreement"), a copy of which is attached hereto as Exhibit B. All capitalized terms used herein and not otherwise defined shall have the same meaning as set forth in the Settlement Agreements.

## I. __INTRODUCTION__

After several months of hard-fought, arm's-length negotiations by highly experienced, capable counsel, involving multiple mediation sessions before Honorable Magistrate Judge Jacob Hart that commenced in the Summer of 2008, Plaintiffs reached settlements with both Arkema and FMC, (collectively, the "Settlement Agreements").

The Settlement Agreements resolve the claims of a proposed settlement class of plaintiffs ("Settlement Class") that arise from direct purchases of hydrogen peroxide, sodium perborate, and sodium percarbonate in the United States. The Arkema Settlement Agreement, which was the first of these two settlements, secured cooperation obligations that required Arkema to provide information which, because of the global scope of Arkema's operations, was not completely available through discovery. The Arkema Settlement, which was reached by Class Counsel as a result of their informed assessment of the nature and the quality of the evidence, also allowed for a responsible resolution of Plaintiffs' claims against Arkema that secured real value for the Arkema Settlement Class, while at the same time streamlining the litigation and allowing for a more focused litigation effort against FMC. Viewed, as it must be, in the context of the procedural posture and dynamic of the litigation at the time it was reached, the Arkema settlement bestowed a fair value upon the Arkema Settlement Class. Class Counsel believe and

respectfully submit that the proposed Arkema settlement, reached before discovery efforts began in earnest with FMC, contributed to Plaintiffs' ability to secure the FMC settlement.

The FMC Settlement Agreement secures for the FMC Settlement Class a ten million dollar ($10,000,000.00) cash payment, subject to reduction based on claims made by Opt-Out Entities. *See* Section III(D) *infra*; FMC Settlement Agreement, paragraph 32 (Exhibit B hereto).

Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement Agreements so that notice may be issued to the Arkema and FMC Settlement Classes regarding the terms of the settlements, the right to opt-out of or object to the settlements, and the date for the hearing on final approval of the settlements. Plaintiffs also request that the Court approve the proposed forms of notice and authorize distribution of the notice to the Arkema and FMC Settlement Classes.

Plaintiffs respectfully move the Court for an Order (the "Notice Order"), in substantially the form submitted herewith which, *inter alia*:

1.      finds that the proposed settlements with Arkema and FMC are sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the Arkema and FMC Settlement Classes; and

2.      approves the form of mailed Notice of settlement and the Summary Publication Notice of settlement, and Claim Form attached to the proposed Order as Exhibits C-1, C-2, and C-3 respectively.

The foregoing provisions of the requested Notice Order set in motion the procedures necessary to obtain final approval of the proposed settlements as required by Rule 23(e) of the Federal Rules of Civil Procedure.

At this time, in considering whether to grant preliminary approval, the Court need

determine only whether the proposed settlements are sufficiently fair, reasonable, and adequate to allow Notice of the proposed settlements to be disseminated to the Arkema and FMC Settlement Classes.  Plaintiffs submit that the proposed settlements satisfy the required standards, and respectfully request that the Court authorize dissemination of notice pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## II.     BACKGROUND

### A.     The Litigation

Having presided over this litigation since its inception in 2005, this Court is, of course, fully aware of the nature and scope of the claims asserted in this litigation, the procedural posture of the case, and the vigorous advocacy that has characterized the litigation since its inception.

The operative complaint in this Action is the Consolidated Amended Class Action Complaint ("Complaint") filed on April 29, 2005.  The Complaint alleges that Arkema, FMC and the other Defendants violated the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, by engaging in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices for hydrogen peroxide, sodium perborate and sodium percarbonate in the United States.  The lawsuit asserts that, as a result of the Defendants' alleged conduct, the prices paid to the Defendants by the Plaintiffs and members of the putative class for Hydrogen Peroxide were higher than they otherwise would have been.  The lawsuit seeks treble damages, injunctive relief, attorneys' fees and costs from Defendants.

Arkema and FMC are the last Defendants to reach Settlement Agreements with Plaintiffs.

### B.     The Negotiations/ Mediation

The Settlement Agreements were arrived at only after extensive negotiations over several months, during which time the merits of Plaintiffs', Arkema's, and FMC's (together, the "parties") positions were thoroughly discussed, evaluated, and negotiated.  By the beginning of

the mediation sessions, merits discovery had already concluded.  Thus, prior to settlement,

Plaintiffs' counsel reviewed over 2.5 million pages of documents, extensive electronic

transactional and other financial data and information, numerous fact and expert depositions,

discovery and other motions and court appearances. The scope and magnitude of these efforts are

described in detail in the Joint Declaration of Plaintiffs' Co-Lead Class Counsel in Support of

Plaintiffs' Motion for Attorney Fees and Expenses filed with the Court on October 1, 2008

(Docket No. 517, Exh. 4), to which Plaintiffs respectfully refer the Court.

 As part of the settlement negotiations, the parties had frequent in-person meetings and

telephone conferences, and thoroughly analyzed the relevant industry data and other pertinent

facts.  Moreover, in negotiating the Settlement Agreements, the parties engaged in mediation

sessions before Honorable Magistrate Judge Jacob Hart during which they examined the merits

of their respective positions.  Thus, the discussions were founded on the attorneys' full

understanding of the strengths and weaknesses of the case.

 In sum, the settlements with Arkema and FMC are the result of extensive good faith

negotiations, after factual investigation and legal analysis, and are, in the opinion of the parties,

who are experienced in these matters, fair, reasonable, and adequate to the Arkema and FMC

Settlement Classes.  Accordingly, Plaintiffs believe and respectfully submit that the proposed

settlements are in the best interests of the Class and should be preliminarily approved by the

Court.

## III. PROVISIONS OF THE SETTLEMENT AGREEMENTS

### A. The Settlement Class

The Settlement Agreements each define a Settlement Class as follows:

> All persons or entities, including state, local and municipal
> government entities (but excluding Defendants, their parents,
> predecessors, successors, subsidiaries, affiliates, as well as federal

5

government entities) who purchased Hydrogen Peroxide, Sodium
Perborate, or Sodium Percarbonate in the United States, its
territories, or possessions, or from a facility located in the United
States, its territories, or possessions, directly from any of the
Defendants, or from any of their parents, predecessors, successors,
subsidiaries, or affiliates, at any time during the period from
September 14, 1994 up to and including January 5, 2005.

**B.**    **Release Provisions**

In exchange for consideration provided by Arkema and FMC, Plaintiffs have agreed to

release, acquit, and forever discharge from any and all claims, demands, actions, suits, and

causes of action, damages, and liabilities that were asserted in this litigation. The full text of the

proposed releases, including the limitations thereof, are set forth in the Arkema Settlement

Agreement, Section C (Exhibit A hereto), and the FMC Settlement Agreement, Section D

(Exhibit B hereto).

**C.**    **Cooperation Provision in the Arkema Settlement Agreement**

As indicated above, the proposed settlement with Arkema, the first of these two proposed

settlements, was driven by an informed assessment of the nature and quality of the evidence

concerning Arkema.  In the interest of streamlining the remaining claims against FMC, against

which plaintiffs determined they had a stronger claim, and to avoid burdening the Court with

what promised to be a protracted and uncertain phase of dispositive motion and pretrial

preparation practice, Class Counsel determined that it was in the best interests of the case and the

Class to obtain the assurance of significant cooperation from Arkema to enhance the value of the

claim against FMC.  Working under the auspices of Magistrate Judge Hart, Plaintiffs and

Arkema engaged in protracted negotiations, spanning a period of months, concerning the scope

of that cooperation and ultimately arrived at a package of cooperation that served the dual goal

of: (1) streamlining the litigation and the remaining claims against FMC for the benefit of the

6

Class (avoiding bogging down the parties and the Court with protracted litigation over Arkema-specific issues that could complicate the more straightforward case against FMC); and (2) securing cooperation that would benefit the Class in connection with the remainder of the litigation.

The result was a useful cooperation package (*See* Arkema Settlement Agreement, Section F, (Exhibit A hereto)), relating to assisting plaintiffs in assuring the admissibility of hundreds of relevant records at summary judgment and trial, and an agreement to produce and assist in qualifying for admissibility at trial additional relevant documents and witnesses. Because of the international scope of Arkema's hydrogen peroxide operations, the cooperation obligation included, in part, information and perhaps witnesses that would not have been available to plaintiffs, if at all, without resort to expensive, time consuming and uncertain proceedings under the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters. During the course of the protracted mediation with Arkema before Magistrate Judge Hart, experienced class counsel, negotiating at arm's-length with a vigorous adversary represented by sophisticated counsel, concluded that the value of that cooperation to the overall litigation exceeded the benefit of continued litigation against Arkema, where the opportunity to secure the benefit of such cooperation may have been squandered without obtaining any greater benefit for the Class. Class Counsel's judgment was validated by future developments.

### D.    The FMC Settlement Amount

The proposed FMC Settlement Agreement provides that FMC pay ten million dollars and no cents ($10,000,000.00). This amount will be wire transferred by FMC within ten (10) business days of April 15, 2009 into the Settlement Escrow Account as set out in the FMC Settlement Agreement. *See* FMC Settlement Agreement, paragraph 30 (Exhibit B hereto). The

Settlement Escrow Account is being, and will continue to be, administered in accordance with the provisions of the FMC Settlement Agreement.[1]  The Settlement Agreement contains a provision allowing FMC to reduce the Settlement Fund based on additional opt-outs, if FMC reaches a settlement agreement with an Opt Out entity or a court issues a final judgment regarding claims against FMC by an Opt Out entity.[2]  *See* FMC Settlement Agreement, paragraph 32 (Exhibit B hereto).  Other courts have approved similar automatic opt-out reductions of a Settlement Fund.  *See, e.g., Meijer v. 3M*, 2006 WL 2382718, at *3, 25 (E.D.Pa. August 14, 2006) (issuing final approval of a settlement that automatically reduced the settlement fund when class members opted out of the settlement); *In re Ethylene Propylene Diene Monomer Antitrust Litig.* (*EPDM*), Civil Action No. 3:03MD1542 (D.Conn.) (Exhibit E hereto) (approving a settlement with an opt-out reduction provision based on the relative amount of EPDM purchases by opt-outs); *In re OSB Antitrust Litigation*, Civil Action No. 2:06-cv-00826-PD, Docket Nos. 940-944 (E.D.Pa. Dec. 9, 2008) (Diamond, J) (issuing final approval of five settlement agreements that included automatic opt-out reductions).

---

[1]      The Settlement Fund has been established at Citibank, N.A., which will be investing the FMC Settlement Fund in United States treasury obligations. All income earned on the Settlement Fund shall become and remain part of the Settlement Fund. *See* FMC Settlement Agreement, paragraph 35 (Exhibit B hereto).

[2]      Pursuant to the FMC Settlement Agreement, within two business days after FMC provides a Proof of Opt Out Claim, FMC and Class Counsel shall jointly instruct the Escrow Agent to pay FMC an amount equal to the initial balance in the Opt Out Escrow Account multiplied by the percentage derived by dividing that party's share of Opt Out Purchases by the total Opt Out Purchases, plus any net income attributable to the amount so calculated.  If a final settlement agreement is not reached, nor a final judgment issued with respect to claim from an Opt Out Entity, the amount set aside from the Settlement Amount shall be divided evenly between FMC and the Class. *See* FMC Settlement Agreement, paragraph 32 (Exhibit B hereto).

**IV.    THE PROPOSED SETTLEMENTS ARE WITHIN THE RANGE OF POSSIBLE
APPROVAL AS FAIR, REASONABLE, AND ADEQUATE**

**A.    Standard for Granting Preliminary Approval**

Four times in this litigation, this Court has followed the two-step process for

consideration and approval of class action settlements; first, preliminary approval is obtained,

and then the court schedules a fairness hearing, after notice to the class, to determine final

approval of the proposed settlement. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*,

962 F. Supp. 450, 562 (D.N.J. 1997). Thus:

> Review of a proposed class action settlement generally involves
> two hearings. First, counsel submit the proposed terms of
> settlement and the judge makes a preliminary fairness evaluation.
> In some cases, this initial evaluation can be made on the basis of
> information already known, supplemented as necessary by briefs,
> motions, or informal presentation by parties. . . . The judge must
> make a preliminary determination on the fairness, reasonableness,
> and adequacy of the settlement terms and must direct the
> preparation of notice of the . . . proposed settlement, and date of
> the fairness hearing.

*In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *1 (E.D. Pa. May 11, 2004)

(quoting *Manual for Complex Litigation (Fourth)* §21.632 (2004)). *See also 4 Newberg on Class*

*Actions* §11:25, at 38-39 (4th ed. 2000); *In re Prudential*, 962 F. Supp. at 562. Indeed:

> In evaluating a settlement for preliminary approval, the court need
> not reach any ultimate conclusions on the issues of fact and law
> that underlie the merits of the dispute. . . . Instead, the court must
> determine whether "the proposed settlement discloses grounds to
> doubt its fairness or otherwise obvious deficiencies, such as unduly
> preferential treatment of class representatives or of segments of the
> class, or excessive compensation for attorneys, and whether it
> appears to fall within the range of possible approval. . . . The
> analysis often focuses on whether the settlement is the product of
> 'arms-length negotiations.'"

*In re Auto. Refinishing Paint*, 2004 WL 1068807, at *2 (citations omitted).

Authorization to disseminate notice is recognition by the court that the settlement is in the

range of possible approval. *See, e.g., In re Chambers Dev. Sec. Litig.,* 912 F. Supp. 822, 827 (W.D. Pa. 1995). It is akin to "a determination that there was or might be termed 'probable cause' to submit proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n – Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). A settlement falls within the "range of possible approval" under Rule 23 if there is a conceivable basis for presuming that the standard applied for final approval will be satisfied. The standard for final approval of a settlement is that the settlement is fair, adequate and reasonable to the class. *Walsh v. Great Atlantic & Pacific Tea Co., Inc.,* 726 F.2d 956, 965 (3d Cir. 1983).

When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D.C. Md. 1983); *see also In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination establishes an initial presumption of fairness"). That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed. *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).[3]

---

[3]     The factors considered for final approval of a class settlement as "fair, adequate and reasonable" include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004); *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318-24 (3d Cir. 1998); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 713 (E.D. Pa. 2001).

Finally, in reviewing the proposed settlement, the Court should consider that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium,* 391 F.3d at 535; *see also In re Gen. Motors,* 55 F.3d at 784 (holding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to 'an overriding public interest'").

### B.    The Negotiation Process with Arkema and FMC Supports Preliminary Approval of Each Settlement

Class Counsel negotiated with Arkema and FMC separately, but because the parties employed similar negotiation processes, this section discusses the merits of the negotiation process with both Defendants collectively.

Settlements negotiated by experienced counsel that result from arm's-length negotiations are entitled to deference from the court.  *In re Auto. Refinishing Paint Antitrust Litig.*, 2003 WL 23316645 at *6 (E.D. Pa. Sept. 5, 2003); *see also In re Linerboard*, 292 F. Supp. 2d at 640 (holding that "[a] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (citing *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith").  This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e).

11

The proposed settlements here are the result of lengthy and hard-fought, arm's-length negotiations between counsel experienced in complex antitrust class action litigation. The Settlement Agreements were negotiated over a period of several months by Class Counsel in a process that involved frequent and regular in-person and telephonic meetings between the parties. In preparation for such negotiations, Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation – reviewing more than 2.5 million pages of documents and taking 31 depositions of the Defendants' current and former employees – and consulted extensively with experienced economists. Indeed, at the commencement of settlement negotiations, merits discovery had already concluded. Thus, Plaintiffs were well-informed as to the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreements were initially negotiated.

Moreover, the negotiations with Arkema and FMC were each facilitated by at least one mediation session before the highly experienced and capable Judge Hart (as have all settlements in this litigation), during which the parties thoroughly examined the strengths and weaknesses of their respective positions. This process is exemplary of fair negotiations and resolution. *See Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 262-3 (S.D.N.Y. 1998) (finding that "the third-party mediation process was an appropriate measure for arm's-length negotiations"). Indeed, the participation of a well-regarded mediator further demonstrates the parties' appreciation of the merits of the case. *See, e.g., Linerboard*, 292 F. Supp. 2d at 640 ("The Settlement agreement is based upon significant fact-gathering and investigation into the legal issues. It was negotiated over a several month period on behalf of the classes by counsel experienced in antitrust and class action matters. The negotiations involved a number of face-to-face meetings and telephone conferences. The Court concludes that the parties conducted adequate investigation and

discovery to gain an appreciation and understanding of the relative strengths and weaknesses of the claims and defenses asserted."); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) ("Here, counsel have gained such an appreciation through their exchange of some discovery and through their participation in two mediation sessions with Joseph Torregrossa, mediator for the Third Circuit.").

The arm's-length nature of the negotiations and the participation of experienced advocates throughout the process strongly support the conclusion that the proposed settlement is fair, reasonable, and adequate, and falls within the range of possible final approval. Nothing in the course of the negotiation or in the substance of the proposed settlements presents any reason to doubt its fairness.

### C.    The Proposed Settlements Achieve a Fair and Reasonable Result for the Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation As Against Arkema and FMC

Antitrust class actions are "notoriously complex, protracted, and bitterly fought." *Weseley v. Spear,* 711 F. Supp. 713, 719 (E.D.N.Y. 1989). This action has been no different. Continuing this litigation against Arkema and FMC would entail a lengthy and highly expensive legal battle, involving complex legal and factual issues, particularly relating to the expert and *Daubert* proceedings and pretrial preparation that would be required to bring this case to trial. It is reasonable to expect that, as since the inception of this litigation, all such matters would be sharply disputed and vigorously contested.[4] Additionally, Arkema and FMC would assert various defenses, and a jury trial might well turn on close questions of proof, many of which

---

[4]    The substantial savings in time and expense that these settlements avert is a looming battle that was stayed by the Court in September 2008 relating to contested proceedings over the authentication of documents and the qualification of potential summary judgment and trial exhibits. *See* Order, Docket No. 512 (Sept. 4, 2008). These proceedings alone, which would potentially involve thousands of documents, would likely span hundreds of hours, and require substantial attorney time and expense for Plaintiffs, FMC and Arkema.

would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties.[5]  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable.  … [T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."); *id.* at 476 (observing that "[d]amages at trial inevitably would involve a 'battle of the experts'" and noting that it is "'difficult to predict with any certainty which testimony would be credited'"); *see also W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").  Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success" and citing a case where a multimillion dollar judgment was reversed).

Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. at

---

[5]    *See, e.g., United States Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *MCI Commc'ns Corp., v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1982) (remanding antitrust judgment for new trial and damages).  *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974), illustrates the risks faced by plaintiffs in an antitrust class action.  After two trips to the Court of Appeals and one to the U.S. Supreme Court, plaintiffs, the putative class, and their counsel recovered nothing.

838.  Against this background, these settlements represent a fair and reasonable resolution of this matter for the members of the Arkema and FMC Settlement Classes.

Furthermore, Arkema and FMC are the last Defendants to settle in this Action; approval of these settlements will close the case, eliminating the need for this Court to continue to devote its limited resources to this time-consuming complex litigation.

Considering the "complexity, expense and likely duration of the litigation," the "risks of establishing liability … [and] damages," and the "reasonableness of the settlement fund" in light of all the attendant risks of litigation, each Settlement Agreement falls within the possible range of approval as a "fair, reasonable, and adequate" settlement of the Class's claims.  *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *see also Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (approval granted where "[d]elay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait for years for any recovery, further reducing its value").[6]  In particular, FMC's $10,000,000.00 cash payment (less any reductions for opt-out settlements pursuant to the terms of the agreement (s*ee* FMC Settlement Agreement, paragraph 32 (Exhibit B hereto))  provides for reasonable compensation to the FMC Settlement Class that will be available earlier—perhaps years earlier—than if litigation against FMC continued through trial and appeal.

D.    **The Arkema Settlement's Cooperation Provisions Support a Finding that the Settlement is Fair, Reasonable, and Adequate**

As discussed *supra*, the Court should grant preliminary approval of the Arkema

---

[6]      *See also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y 2003) (fact that the class faced a long trial and the additional time it would take to exhaust all appeals "weigh[ed] heavily in favor of approving the Settlements"); *States of New York and Maryland v. Nintendo of Am., Inc.,* 775 F. Supp. 676, 681 (S.D.N.Y. 1991) (approving settlement and noting that "[i]f the litigation proceeds to trial, it no doubt will be complex, protracted and costly.  Even if [plaintiffs] ultimately prevail, it could be years before consumers received any meaningful resolution.").

Settlement because the parties conducted fair, arm's-length negotiations, and the settlement promotes judicial economy, and provided for substantial cooperation from Arkema with respect to what promised at the time to be a bruising battle with FMC. In the opinion of Class Counsel, this benefit materially assisted Class Counsel in connection with the eventual FMC recovery. When Plaintiffs reached a Settlement Agreement with Arkema, they had not yet entered into a Settlement Agreement with FMC, rendering Arkema's promised cooperation immediately valuable in the prosecution of claims against FMC. In the opinion of Plaintiffs' counsel, this proposed settlement materially benefited the Class at the time it was entered into. *See In re Ikon Office Supplies Inc. Securities Litigation*, 194 F.R.D. 166 (E.D.Pa. 2000) (cooperation agreements are valuable when settling a complex case); *Auto. Refinishing Paint*, 2004 WL 1068807, at *2 (acknowledging the assistance that the settling defendants will provide "in pursuing this case against the remaining Defendants"); *In re Mid-Atlantic Toyota,* 564 F. Supp. at 1386 ("[T]he commitment [the] Distributor defendants have made to cooperate with plaintiffs will certainly benefit the classes, and is an appropriate factor for a court to consider in approving a settlement"); *In re Corrugated Container Antitrust Litig.,* 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981) *aff'd* 659 F.2d 1322, 1329 (5th Cir. 1981) ("The settlement agreements provided for cooperation from the settling defendants that constituted a substantial benefit to the class. Those provisions were intended to save plaintiffs time and expense in the continuing litigation . . . [and] made certain information and expertise available to the class which might not have been available through normal discovery.").

## E.    The FMC Settlement Amount and Opt-Out Reduction is Fair, Reasonable, and Adequate

As discussed *supra*, the Court should grant preliminary approval of the FMC Settlement because the parties conducted fair, arm's-length negotiations, and the settlement promotes

judicial economy.  In addition, the Court should preliminarily approve the proposed FMC

Settlement because the settlement amount is a substantial payment to Class members.

> **1.      The Settlement Amount Constitutes Substantial Compensation to the Settlement Class**

The ten million dollars and no cents ($10,000,000.00) cash recovery, less a proportional

reduction based on the level of opt-outs with whom FMC ultimately negotiates a settlement or

pays a judgment, is a fair and reasonable substantial payment to members of the Settlement

Class.  '[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to

a hundredth or even a thousandth part of a single percent of the potential recovery.'"  *Lazy Oil,*

*Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (quoting *Grinnell*, 495 F.2d at 455,

n.2).  Furthermore, this class action has been pending for more than forty-eight months and the

Third Circuit encourages settlement of complex litigation "that otherwise could linger for years."

*In re School Asbestos Litig*., 921 F.2d 1330, 1333 (3d Cir. 1990); *see also Cotton v. Hinton*, 559

F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public

interest in favor of settlement.")

This settlement represents a fair and reasonable result for the members of the FMC

Settlement Class.  FMC's $10,000,000.00 cash payment, less a proportional reduction based on

the level of opt-outs with whom FMC ultimately negotiates a settlement or pays a judgment,

provides for significant compensation to the Settlement Class that will be available earlier—

perhaps years earlier—than if litigation against FMC continued through trial and appeal.

> **2.      The Provision for an Opt-Out Reduction in the FMC Settlement is Fair, Reasonable, and Adequate to the Settlement Class**

The automatic opt-out reduction clause in the FMC Settlement Agreement is within the

range of possible approval as fair, reasonable, and adequate; similar opt-out reduction clauses

have been approved by other courts.  *See EPDM*, Civil Action No. 3:03MD1542 (approving a

settlement with an opt-out reduction provision based on the relative amount of EPDM purchases by opt-outs) (Exhibit E hereto); *Meijer*, 2006 WL 2382718, at *3, 25 (issuing final approval of a settlement that automatically reduced the settlement fund when class members opted out of the settlement); *In re OSB Antitrust Litigation*, Civil Action No. 2:06-cv-00826-PD, Docket Nos. 940-944 (E.D.Pa. Dec. 9, 2008) (Diamond, J) (issuing final approval of five settlement agreements that included automatic opt-out reductions).

FMC will only receive a reduction in the Settlement Amount if it settles with or receives a final judgment from a court with an Opt Out entity.[7]

## V.    THE FORMS OF NOTICE SHOULD BE APPROVED FOR BOTH THE ARKEMA AND FMC SETTLEMENTS[8]

Rule 23(c)(2)(B) requires that:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

*See also* Fed. R. Civ. P. 23(e)(1)(B) ("[the] court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement . . ."). In addition, the notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified,

---

[7]    Otherwise, pursuant to the Settlement Agreement, the amount set aside from the Settlement Fund will be divided evenly between FMC and the class.

[8]    Submitted herewith is a [Proposed] Order Granting Preliminary Approval of Proposed Settlements with Arkema and FMC ("Order") (Exhibit C). Attached to the Order are proposed forms of the Notice of Proposed Partial Settlement of Class Action, Settlement Hearing, and Right to Appear ("Notice") (Exhibit C-1), Summary Notice of Proposed Partial Settlement of Class Action, Settlement Hearing, and Right to Appear ("Summary Notice") (Exhibit C-2), and Claim Form (Exhibit C-3). Also attached, as Exhibit D, is a Form of Final Judgment and Order of Dismissal Granting Final Approval to Proposed Class Action Settlement.

- the class claims, issues, or defenses,

- that a class member may enter an appearance through counsel if the member so desires,

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Notice complies with the requirements of Rule 23(c)(2)(B). It clearly states the nature of the action and who is included in the Arkema and FMC Settlement Classes. It explains that this is an antitrust action based on allegations that the defendants engaged in an unlawful conspiracy to fix, raise, maintain, and stabilize prices for Hydrogen Peroxide. The Notice tells members of the Class of their rights and options in the event they remain members of the FMC and Arkema Settlement Classes, and in the event they do not. Specifically, they are informed that their interests will be represented by Class Counsel, although they may enter an appearance through their own counsel at their own expense. They are informed that they may request to be excluded from the Settlement Class and the legal ramifications of doing so. The Notice also explains the binding effect of a class judgment under Rule 23(c)(3). The members of the Class are instructed as to how they can obtain copies of papers filed in the case and how to contact Class Counsel if they have questions about the settlement or the case in general. Such a notice complies with due process requirements. *See, e.g., In re Prudential*, 148 F.3d at 327; *Nichols v. Smithkline Beecham Corp.*, 2005 WL 950616, at *11 (E.D. Pa. Apr. 22, 2005); *Tourangeau v. Uniroyal, Inc.*, 1987 WL 54374, at *22 (D. Conn. Mar. 3, 1987).

Plaintiffs propose that the Notice be sent within thirty (30) days of the Court's

preliminary approval of the Settlement Agreement by First-Class mail to all persons and entities

identified by Defendants as members of the Settlement Class.  The Notice shall also be provided

to all persons who request it in response to the published Summary Notice.

A Summary Notice, which explains how to obtain a copy of the Notice, will be published

in the National Edition of the <u>Wall Street Journal</u>, <u>ICIS Chemical Business Americas</u> (f/k/a

<u>Chemical Market Report</u>), <u>Pulp & Paper Magazine</u>, and <u>Purchasing Magazine</u>.  In addition,

copies of the Notices will be posted on the Internet Web site dedicated to this litigation,

www.HydrogenPeroxideAntitrustLitigation.com.  The Summary Notices will be published

promptly after the Court grants preliminary approval of the settlements. These are the same

publications approved by the Court and utilized by the parties in connection with prior

settlements.

The notice program and forms of notice suggested by Plaintiffs, after mediation sessions

under the auspices of Magistrate Judge Hart, satisfy these requirements, and provide that notice

be given in the same manner as described in the Court's Order dated February 22, 2007.  The

previous settlements approved in this case have also used this type of notice program.  *See*

Notice of Proposed Partial Settlement of Class Action, Settlement Hearing, and Right to Appear,

and the proposed Summary Notice for the Akzo, Degussa, Solvay, and Kemira Defendants,

Docket Nos. 425-4, 425-5, Exhibits C-D (Azko notice program) (Jan. 15, 2008); Docket No. 324

(July 2, 2007) (Degussa notice program); Docket No. 413-2, Exhibits 1-2 (Kemira notice

program) (Jan. 7, 2008); Docket No. 463, Exhibits B-1, B-2 (Solvay notice program).

Furthermore, this precise notice program has been utilized in cases such as this and has

been found to comply with the requirements of Rule 23(c)(2)(B).  *See, e.g.*, *In re Prudential*, 148

F.3d at 326-27 (approving virtually identical form of notice); *Automotive Refinishing Paint*, 2004

WL 1068807, at *3 (same); 5 *Moore's Federal Practice* (3d Ed. 2003) at § 23.63[8][a] ("notice of the class action is normally sent to the identified individual class member by first-class mail."); *see also id.* at § 23.63[8][b] ("publication of notice is often the best notice practicable for class members who cannot be identified or located specifically through reasonable efforts."); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified). In fact, similar notice programs have been said to "exceed the requirements of Rule 23 and due process." *In re Prudential*, 148 F.3d at 327.

Courts commonly approve notice programs that alert class members to automatic reduction provisions based on the value of claims made by class members who opt-out of the settlement. *See, e.g., EPDM*, Civil Action No. 3:03MD1542 (Exhibit E hereto) (approving a settlement with an opt-out reduction provision based on the relative amount of EPDM purchases by opt-outs); *Meijer*, 2006 WL 2382718, at *3, 25. As is the case here, notices to class members often do not include the amount of any reduction in the settlement fund, because class members opt out after notice has been given. Courts have held that notice to class members need not include every detail regarding opt-out provisions. *See In re Remeron End-Payor Antitrust Litigation*, 2005 U.S. Dist. Lexis 27011, *51-53 (D.N.J. Sept. 13, 2005) (opt-out rider "has no legitimate bearing on a class member's decision to opt-out of the settlement, object, or file a claim form"); *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 253 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) (confidential "opt-out" threshold beyond which defendant reserved right to withdraw from settlement deemed irrelevant to class members' opt-out decision); *Jaffe v. Morgan Stanley & Co.*, 2008 U.S. Dist. Lexis 12208, *66-67 (N.D. Cal. Feb.

7, 2008) (court preliminarily approved settlement agreement referencing confidential opt-out terms filed under seal).

In *In re Worldcom Inc. Securities Litigation*, the court held that notice was adequate when class members were given the formula that would be used to calculate the amount of the opt-out reduction, even though the amount of the reduction was not specified.  2004 WL 2591402, at *11 (S.D.N.Y. November 12, 2004).  As is the case with the FMC Settlement, the number of opt outs could not be known until the end of the opt-out period (after notice had been given), so providing the formula that would be used to calculate the reduction to the settlement fund was sufficient.  *See id*; Exhibit C-1 hereto (providing the formula used to calculate any reduction to the settlement fund to FMC class members).

Similarly, in *Warfarin Sodium*, the court held that despite the lack of specific information regarding the terms and conditions of the opt-out provision, notice to the class was sufficient because it informed class members about the nature of the litigation, the claims and defenses offered by the parties and the general terms of the settlement and distribution plan; it was not necessary to provide class members with specific information regarding the terms and conditions of the opt-out provision.  212 F.R.D. at 253.

The notices being provided to FMC class members set forth ample information regarding the nature of this litigation, the claims and defenses offered by the parties, and the general terms of the settlement and distribution.  As a result, class members will be able to make a truly informed decision about whether they want to opt out, object or simply file a claim form.

Although Class Counsel expect that there will be opt-outs from the FMC Settlement Class (certainly, at least those entities that have already filed suit against FMC and who opted out of all previous settlements), it is impossible to know the amount of the opt-out reduction

prior to issuing notice to FMC Settlement Class Members and the expiration of the opt-out deadline.

The content of the Notice and the proposed plan for disseminating the Notice fulfills the requirements of Rule 23 and due process.  Accordingly, approval of the notice program is appropriate.

## VI.    CERTIFICATION OF THE PROPOSED ARKEMA AND FMC SETTLEMENT CLASSES IS WARRANTED

Rule 23 governs the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class.  All the criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.  Thus, a settlement class should be certified where the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy – are satisfied, and when one of the three subsections of Rule 23(b) is also met.  *Warfarin Sodium*, 391 F.3d at 527-530.

The issue of class certification has been extensively briefed. Plaintiffs have demonstrated that the requirements of class certification have been satisfied and have supported their motion with extensive expert testimony.[9]  While the settling defendants initially opposed class certification (with many of their challenges relating to issues reflecting the manageability of a potential trial which is not an issue in the settlement context), *see Warfarin Sodium,* 391 F.3d at 529-30,[10] each has now agreed that certification of the Settlement Classes is appropriate. *See* Arkema Settlement Agreement, paragraph 3 (Exhibit A hereto); FMC Settlement Agreement, paragraph 3 (Exhibit B hereto).

---

[9]    Motion for Class Certification and Appointment of Class Counsel Filed by Direct Purchaser Plaintiffs and Memorandum, Affidavit, and Compendium of Exhibits in Support Thereof, Docket Nos. 192-195 (May 16, 2006).

[10]    Defendants' Memorandum Filed Under Seal in Opposition to Plaintiffs' Motion for Class Certification, Docket No. 243 (Oct. 17, 2006).

According, there are no currently operative contested issues, and no disputed issues to resolve as to class certification,[11] making it clear that there is an adequate basis for the Court to make the requisite findings proposed by Plaintiffs in the accompanying form of Order, on the basis of all of the evidence in the record, that the Settlement Classes satisfy the requirements of Rule 23, subject to confirmation at the final approval hearing.


VII.    **CLASS COUNSEL'S PROPOSED DISTRIBUTION OF THE APPROVED SETTLEMENT FUNDS IS SUFFICIENTLY REASONABLE AND FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL**

Plaintiffs propose an identical allocation plan to that which has already been approved by the Court with respect to the other settlements in this Action. *See* Order Regarding Direct Purchaser Class Plaintiffs' Motion for Approval of Distribution of Approved Settlement Funds, Docket No. 519 (Oct. 17, 2008).  As such, Plaintiffs propose that the Settlement Fund (including all interest earned thereon), less any amounts awarded by the Court for counsel fees and reimbursement of expenses, and the payment of other allowed expenses (such as taxes on interest earned by the Settlement funds and costs of notice) (the "Net Settlement Funds"), be distributed to each member of the Settlement Classes who timely and properly files a proof of claim in accordance with procedures set by the Court.

Based on a careful evaluation of the evidence by Class Counsel, Class Counsel propose to distribute the Net Settlement Funds as follows:

> The Net Settlement Funds will be distributed to each eligible member of the Settlement Classes who submit a valid and timely Proof of Claim, and will be distributed according to the following formula:

---

[11]    *Cf. In re Hydrogen Peroxide Antitrust Litig.*, 552 F.2d 305 (3d Cir. 2008).

A.  The Net Settlement Funds will be distributed to eligible
    claimants who file a valid claim form based on their total
    "Recognized Claim."

B.  (i)   The "Recognized Claim" for purchases of hydrogen
    peroxide during the period September 14, 1994 through
    December 31, 2001 shall be equal to the dollar amount of the
    Settlement Class Member's purchases of hydrogen peroxide
    from defendants during that period.

    (ii) The "Recognized Claim" for purchases of hydrogen
    peroxide during the period from January 1, 2002 through
    January 5, 2005 shall be 10% of the dollar amount of the
    Settlement Class Member's purchases of hydrogen peroxide
    during that period.  For example, if Settlement Class Member
    purchased $20 of hydrogen peroxide from defendants during
    the period September 14, 1994 through December 31, 2001 and
    $10 of hydrogen peroxide from defendants during the period
    January 1, 2002 through January 5, 2005 its "Recognized
    Claim" shall be $21.

    (iii) Purchases of sodium perborate or sodium percarbonate
    shall not be included in a Recognized Claim.

C.  The Net Settlement Fund will be distributed to Settlement
    Class members on a pro rata basis among all Settlement Class
    members who submit a valid and timely claim form.  In other
    words, each Settlement Class member shall be paid the
    percentage of the Net Settlement Fund that each Settlement
    Class member's Recognized Claim bears to the total of the
    Recognized Claims of all Settlement Class members who have
    submitted valid and timely proof of claim forms.  However, if a
    Settlement Class Member opted out of a particular settlement,
    it shall not be entitled to share in the proceeds of a settlement
    for which it opted out.

D.  Only direct purchases of hydrogen peroxide from any of the
    defendants may be claimed. Purchases from any other
    manufacturer, distributor and/or retailer may not be claimed.

The Court has broad discretion to approving a proposed plan of distribution of settlement

proceeds, as long as the distribution is fair and reasonable.  *In re Cendant Corp., Litig*., 264 F.3d

201, 253 (3d Cir. 2001).  *See Ikon Office Solutions*, 194 F.R.D. at 184; *In re Computron*

*Software, Inc.*, 6 F.Supp.2d 313, 321 (D.N.J. 1998). "Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Meijer*, 2006 WL 2382718, at *17 (citing *In re Aetna, Inc. Sec. Litig.*, 2001 WL 20928, at *12 (E.D.Pa. Jan. 4, 2001)).[12]

The proposed distribution is fair and reasonable and is based upon Class Counsel's experience and evaluation of the record. Plaintiffs therefore respectfully submit that the proposed distribution falls within the possible range of approval to warrant notice thereof to members of the Settlement Classes.

## VIII.   THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FOR THE FMC SETTLEMENT

Where, as here, Class Counsel has recovered a common fund for the benefit of an identified plaintiff class, Class Counsel is entitled, upon motion and notice to the class, to an award of attorneys' fees and reimbursement of litigation expenses to be paid from the settlement fund created in such amounts as the court may approve. *See Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980); *In re Rite Aid Corp. Securities Litig.*, 362 F.Supp.2d 587, 590 (E.D.Pa. 2005) (Dalzell, J.); *In re U.S. Bioscience Securities Litig.*, 155 F.R.D. 116, 118-120 (E.D.Pa. 1994) (Dalzell, J); and *In re ATI Technologies, Inc. Securities Litig.*, 2003 WL 1962400, at * 2 (E.D. Pa. Apr. 28, 2004) (Dalzell, J.). As such, Class Counsel will respectfully request that the Court reimburse its litigation expenses and compensate Class Counsel for its extensive work on this case with a fee award of 30% of the FMC Settlement Amount.

---

[12]    *See In re Corel Corp. Securities Litig.,* 293 F.Supp.2d 484, 494 (E.D.Pa. 2003); *In re Rent-Way Securities Litig.*, 305 F.Supp.2d 491, 512 (W.D.Pa. 2003); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *10-12 (D.N.J. Nov. 9, 2005); *In re Lucent Technologies, Inc. Securities Litig.*, 307 F.Supp.2d 633, 649 (D.N.J. 2004); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Thirty percent of the FMC Settlement Amount is reasonable and falls *sufficiently within the range of possible approval* to justify giving notice of the request to the Settlement Classes, and the opportunity to be heard with respect thereto pursuant to Fed.R.Civ.P. 23(h).  *See U.S. Bioscience,* 155 F.R.D. at 120 (approving counsel fees of 30% of the settlement fund, "a fee percentage that would likely have been negotiated in the Philadelphia market for legal services in litigation of this sort."); *Rite Aid Corp.,* 362 F.Supp.2d at 590 (approving counsel fees of 25% of the settlement fund, representing a multiplier of over 6.96 of the lodestar value of counsel's time), *ATI Technologies, Inc.,* 2003 WL 1962400, at * 2 (approving counsel fees of 30% of the settlement fund).[13]

The FMC Settlement clearly confers significant benefits on all Class Members in this Action, including those who choose to opt-out of the FMC Settlement.  Where a litigant and/or his attorney pursues litigation and confers a substantial benefit on an ascertainable class or group of non-litigant beneficiaries, counsel is entitled, as a matter of equity, to reasonable attorneys'

---

[13]    *See Meijer*, 2006 WL 2382718, at *22 (Padova, J.) ("[C]ourts within the Third Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (Dubois, J.) (approving fee of 30% of settlement fund); *In re Automotive Refinishing Paint Antitrust Litig.,* 2004 U.S. Dist. LEXIS 29162, at *29 (E.D. Pa. 2004) (Surrick, J.) (approving fee of approximately 32% of settlement fund); *Godshall v. Franklin Mint Co.*, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (Rufe, J.) (awarding a 33% fee and noting that "[t]he requested percentage is in line with percentages awarded in other cases"); *In re FAO, Inc. Sec. Litig.*, 2005 U.S.Dist.Lexis 16577, at *5 (E.D.Pa. May 20, 2005) (Baylson, J.) (awarding fees of 30% and 33%); *In re General Instrument Sec. Litig.*, 209 F.Supp.2d 423, 433-34 (E.D.Pa. 2001) (Reed, J.) (awarding 1/3 of settlement fund); *In re Ravisent Technologies, Inc. Sec. Litig.*, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (Surrick, J.) (awarding 1/3 of settlement fund); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D.Pa. 2000) (Brody, J.) (an "award of one-third of the fund for attorneys' fees is consistent with fee awards" by district courts in the Third Circuit); *In re Greenwich Pharm. Sec. Lit.*, 1995 WL 251293, at *6 (E.D.Pa. August 26, 1995) (Newcomer, J.) (holding that "a fee award of 33.3 percent is in line with the fee awards approved by other courts."). *Accord In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *13 n.1 (D.N.J. Nov. 9, 2005) (Hochberg, J.) (awarding fees of 33.3% from settlement fund).

fees and reimbursement of legal expenses. *See Internal Improvement Fund Trustees v. Greenough*, 105 U.S. 527, 537 (1881); *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166-67 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970); *Hall v. Cole*, 412 U.S. 1, 6 (1973); *Boeing*, 444 U.S. at 479; *In re Residential Doors Antitrust Litigation*, 1998 WL 151804, at *9-10 (E.D.Pa. April 2, 1998) (concluding that attorneys' fees were rightfully calculated based on the entire value of the settlement, not merely the cash payment).

These cases stand for the principle that the successful litigant or attorney has a claim analogous to quantum meruit, namely, that "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched . . . ." *See Boeing*, 444 U.S. at 478; *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (*citing Mills*, 396 U.S. at 392). The costs of the lawsuit are thus spread among all who benefitted from the litigant's efforts. *See also In re Linerboard Antitrust Litig.*, 333 F.Supp.2d 343, 349-51 (E.D. Pa. 2004) (authorizing compensation to be paid to Co-Lead Counsel for benefit conferred on all claimants, including opt-outs).

Here, the efforts of Co-Lead Counsel have conferred substantial monetary benefits on all Class Members, including those who have elected to opt-out of the FMC Settlement, justifying a percentage-of-recovery based on the total Settlement Amount. *See Boeing,* 444 U.S. at 479-482 (attorneys' fee properly assessed on total fund created, rather than amounts actually claimed notwithstanding potential reversion of unclaimed funds to defendants); *see also Van Gemert v. Boeing Co.*, 590 F.2d 433, 439 (2d Cir. 1978) (*en banc*) ("The panel in Van Gemert III held that the common fund doctrine requires that expenses be assessed only against those who have actually claimed the fruits of the litigation, because no one else has benefited from the suit. We

believe this construction of the concept of a 'benefit' is too narrow and is not supported by the common fund case law."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223 (2000); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).[14] Accordingly, Co-Lead Counsel's requested award for the payment of attorneys' fees is reasonable and should be granted. *See EPDM*, Civil Action No. 3:03MD1542 (Exhibit E hereto) (approving a settlement with an opt-out reduction provision based on the relative amount of EPDM purchases by opt-outs, and awarding a percentage fee on the basis of the cash component of the settlement before calculation of the opt-out reduction).

Class Counsel recognize that after notice has been disseminated and after members of the Settlement Classes have been apprised of the range of Class Counsel's request, the Court has the discretion to award fees and expenses in the amount it deems appropriate within that range. Thus, Class Counsel respectfully submit that notice of Class Counsel's intent to request such fees and reimbursement of such expenses should be authorized.

IX.    **PROPOSED TIMING**

Plaintiffs propose that notice be approved, and that Class Counsel be authorized to disseminate the Notice to the proposed Settlement Class on or before a date to be specified by

---

[14]    It has long been recognized in equity that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). In other words, "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). This rule, known as the common fund doctrine, is firmly rooted in American case law. *See, e.g., Greenough*, 105 U.S. at 536-37; *Pettus*, 113 U.S. at 124-25.

the Court upon preliminary approval of the Settlement.  Plaintiffs further propose that the Notice be disseminated by first class mail and by publication in the National Edition of the <u>Wall Street Journal</u>, <u>ICIS Chemical Business Americas</u> (f/k/a <u>Chemical Market Report</u>), <u>Pulp & Paper Magazine</u>, and <u>Purchasing Magazine</u>.

**X.    <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlements.  A proposed form of Order is submitted herewith.

Dated: April 21, 2009

/s/ William P. Butterfield
Michael D. Hausfeld
William P. Butterfield
Reena Armillay Gambhir
**HAUSFELD LLP**
1700 K St. NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201


/s/ Anthony Bolognese
Anthony Bolognese
Joshua H. Grabar
**BOLOGNESE & ASSOCIATES**
Two Penn Center
1500 JFK Boulevard
Suite 320
Philadelphia, PA 19102
Telephone: (215) 814-6750
Facsimile: (215) 814-6764


/s/ Steven Kanner
Steven Kanner
William H. London
Douglas A. Millen
**FREED KANNER LONDON AND
MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (312) 521-2000
Facsimile: (312) 521-2100

<u>/s/ Robert N. Kaplan</u>
Robert N. Kaplan
Gregory Arenson
Jason Zweig
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY  10022
(212) 687-1980
(212) 687-7114 (fax)

Class Counsel