IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: HYDROGEN PEROXIDE ANTITRUST LITIGATION | Civil Action No. 05-666 |
| | MDL Docket No. 1682 |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | CLASS ACTION |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ALLOCATION OF ATTORNEYS' FEES CURRENTLY HELD IN ESCROW

On July 14, 2009, this Court entered an Order granting Class Counsel's Petition for Attorneys' Fees and Reimbursement of Litigation Expenses. Those fees have now been paid and expenses reimbursed, with one exception. The portion of attorneys' fees and expenses to be paid to the firms of Cohen Milstein Sellers & Toll PLLC and Hausfeld LLP, respectively, remain in escrow pending an Order or agreement with respect to how those fees should be allocated between those two firms. Although the firms have attempted to negotiate an amicable resolution of this question, such attempts have been unavailing and appear futile. Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") therefore respectfully requests that this Court enter an Order allocating the attorneys' fees payable to these two firms.

### BACKGROUND

This litigation commenced with the filing of thirty direct purchaser class actions beginning on February 11, 2005. Between May 15, 2007 and March 25, 2008, Plaintiffs reached settlements with four of the six groups of defendants, in amounts totaling $87,383,080.00, before interest. After approving these settlements, the Court, on October 17, 2008, awarded attorneys'

fees in the amount of 30% of the settlement funds. Dkt. No. 520. These funds have been distributed to plaintiffs' counsel.[1]

On November 6, 2008, one of the Co-Lead Counsel for the Class, Michael D. Hausfeld, parted ways with Cohen Milstein and on November 10, 2008, he formed his new law firm, Hausfeld LLP. On December 22, 2008, this Court amended its Orders appointing Interim Co-Lead Counsel and Class Counsel to reflect Mr. Hausfeld's change in firm affiliation. Dkt. No. 539.

On January 28, 2009, and April 15, 2009, respectively, Plaintiffs settled with the two remaining defendant groups, Arkema and FMC, for a total of $10,000,000.00, before interest.[2] On July 7, 2009, Class Counsel sought an award of attorneys' fees and reimbursement of expenses from these settlement funds. Dkt. No. 569.

In connection with the July 7, 2009 application for an award of attorneys' fees and reimbursement of expenses, William P. Butterfield, a Partner at Hausfeld LLP, submitted a Declaration seeking payment of attorneys' fees and reimbursement of expenses that encompassed hours billed and expenses incurred both by Hausfeld LLP and by Cohen Milstein. *See* Declaration of William P. Butterfield in Support of Application for Attorneys' Fees and Reimbursement of Expenses Filed on Behalf of Hausfeld LLP, at n.1 (Exhibit 1 hereto). Mr. Butterfield neither sought nor received authorization from Cohen Milstein prior to submitting a Declaration encompassing Cohen Milstein's fees and expenses. See Declaration of Richard A. Koffman, Exhibit 2 hereto, at ¶ 4. Indeed, Cohen Milstein did not learn of the existence of that

---

[1]  As the Court may recall, after initial disagreements between Cohen Milstein and Hausfeld LLP with regard to their respective claims to a portion of these fees, all interested parties agreed to wire the contested funds directly to Cohen Milstein's bank to pay down the firm's line of credit, on which Mr. Hausfeld was a guarantor.

[2]  The FMC settlement provided for payment of $10,000,000.00, and the Arkema settlement was non-monetary.

Declaration until July 22, 2009, when Mr. Butterfield proposed to submit a similar Declaration in another matter. *Id.* at ¶¶ 2-4. When Richard Koffman of Cohen Milstein objected to Mr. Butterfield's submitting such a Declaration, Mr. Butterfield stated that he had done so in the *Hydrogen Peroxide* matter and saw no reason not to follow the same procedure in the other case. *Id.* at ¶ 3.

At a hearing on July 14, 2009, this Court specifically asked Mr. Hausfeld whether there would be any issues the Court would have to consider with respect to the allocation of attorneys' fees, and Mr. Hausfeld represented that there would not be. July 14, 2009 Hearing Tr. at 4:11 – 5:6.[3] Mr. Hausfeld's representation to the Court is puzzling, given that at the time it was made,

---

[3]    The relevant colloquy at the hearing went as follows:

THE COURT: And with respect to the allocation of the fee --

MR. BOLOGNESE: Yes, sir.

THE COURT: -- the $3 million sought among you folks, you've got all that agreed to?

MR. BOLOGNESE: Yes, your Honor. We have asked for the Court's permission to distribute that in the collective judgment --

THE COURT: Which we've done in other matters.

MR. BOLOGNESE: -- of lead counsel.

THE COURT: But, of course, we've had a couple of bumps, if you will, in the road that were resolved ultimately. There's no bumps in the road?

MR. BOLOGNESE: To my knowledge, your Honor, with respect to my firm, there's not, and I'm not aware of any with respect to any of the other firms.

THE COURT: Mr. Hausfeld, everything is all okay?

MR. HAUSFELD: Yes, your Honor.

THE COURT: Okay, there's no issues that I'll have to consider?

MR. HAUSFELD: No, your Honor.

no one from Hausfeld LLP had even discussed the allocation of these fees with anyone at Cohen Milstein.

By Order dated July 14, 2009 (Dkt. No. 578), the Court awarded attorneys' fees in the amount of 30% of the settlement funds, and reimbursement of litigation expenses in the amount of $23,104.64. Cohen Milstein understands that the bulk of those fees and expenses have been distributed among plaintiffs' counsel, but that the portion payable to Cohen Milstein and Hausfeld LLP (hereinafter "the contested fees") has been placed in escrow pending a determination with respect to its appropriate allocation.[4]

In light of Class Counsel's submissions to the Court and the Court's July 14, 2009 fee Order, both of which contain language supporting such an allocation, Cohen Milstein proposed that the fees payable to Cohen Milstein and Hausfeld LLP, respectively, be allocated in proportion to each firm's lodestar since the inception of the case. *See* August 20, 2009 e-mail from Richard Koffman to William Butterfield, Exhibit 3 hereto. In support of this allocation, Cohen Milstein noted that in its July 14, 2009 fee Order, the Court used the lodestar and multiplier from the inception of the case to perform its lodestar cross-check analysis. *Id.* Cohen Milstein further noted that all of the work done in the case helped produce the final settlements, not just the work done since the initial settlements. *Id.* Finally, Cohen Milstein offered to negotiate a slight discount from the fees to which such an allocation would entitle it in order to avoid the need for judicial intervention. *Id.*

By letter dated August 24, 2009, Hausfeld LLP termed Cohen Milstein's proposal "astonishing," and instead proposed either (1) to allocate the contested fees based only on the lodestar of the two firms from September 1, 2008 through June 30, 2009; or (2) to allocate *all* of

---

[4]    The contested fees are believed to be approximately $500,000.

the two firms' fees in the case, *including those awarded by the Court before Mr. Hausfeld left Cohen Milstein*, based on the firms' respective lodestars from the inception of the case. *See* August 24, 2009 letter from William Butterfield to Richard Koffman, Exhibit 4 hereto.

By letter dated August 28, 2009 (Exhibit 5 hereto), Cohen Milstein rejected each of Hausfeld LLP's proposals, noting that: (1) allocating the contested fees based only on a small subset of the work done by the two firms was neither fair nor reasonable and found no support in the Court's fee Order; and (2) Hausfeld LLP's suggestion that it share in fees earned and awarded by the Court before that firm came into existence conflicts with the Settlement Agreement reached between Cohen Milstein and Hausfeld LLP in February 2009, in which Hausfeld LLP agreed to "unconditionally waive any claim to a share of fees and expense reimbursements" earned prior to November 6, 2008 in this matter. *See* Confidential Agreement, dated February 4, 2009, at ¶ 13.[5]

Because Cohen Milstein and Hausfeld LLP are unable to agree on the appropriate method of allocating the contested fees, Cohen Milstein respectfully seeks an Order from this Court with respect to their allocation. For the reasons set forth below, Cohen Milstein believes the contested fees should be allocated in proportion to the two firms' lodestars from the inception of the case. Based on the lodestar figures included in Mr. Butterfield's Declaration, it appears that Cohen Milstein should receive 90.31% of the contested fees, and Hausfeld LLP should receive 9.69% of the contested fees. *See* Exhibits 1 and 3 hereto (Butterfield Declaration and Koffman e-mail dated August 20, 2009).[6]

---

[5] In light of its confidential nature, that Agreement is not filed herewith, but Cohen Milstein is prepared to submit it for the Court's *in camera* review if the Court so desires.

[6] Cohen Milstein's lodestar from the inception of the case through June 30, 2009 is $3,445,970.25, and Hausfeld LLP's lodestar from the inception of the case through June 30, 2009 appears to be $369,735.00, *see id.*, which yields the above percentages.

## ARGUMENT

The final two settlements in this matter, with the Arkema Defendants and FMC Corporation, did not occur in a vacuum. These settlements were the product of years of hard work by Plaintiffs' counsel in developing and prosecuting this case, which allowed Plaintiffs' counsel to weigh the risks and potential benefits of continued litigation against the benefits provided by the settlement agreements. Plaintiffs' counsel's work in developing and litigating the case over the course of several years also provided them with the leverage needed to negotiate these settlements and bring this matter to a successful conclusion. Thus, the allocation the contested fees should reflect the work done by Plaintiffs' counsel since the commencement of the litigation.

Indeed, in the papers filed in support of their application for an award of attorneys' fees from the final settlements, Class Counsel repeatedly relied on the work done since the inception of the case:

> ➤ "Thus, *most of the work that led up to the Arkema and FMC settlements was performed prior to the filing of the First Joint Declaration* [on October 1, 2008] and therefore, was detailed therein."[7]

> ➤ "Plaintiffs' extensive discovery efforts described in the First Joint Declaration [filed October 1, 2008] placed Co-Lead Counsel in a position to meaningfully assess the facts of this case." *Id.* at 4, ¶ 10.

> ➤ "As demonstrated below, even with the supplemental attorneys' fee award in the full amount requested herein, the total fee that will have been awarded to plaintiffs' counsel

---

[7] Joint Declaration of Plaintiffs' Co-Lead Counsel in Support of Plaintiffs' Motion for (1) Final Approval of the Settlements Between Direct Purchaser Plaintiffs and Defendants FMC Corporation and Arkema France and Arkema, Inc.; (2) Approval of the Proposed Plan of Allocation; and (3) for an Award of Attorneys' Fees and Reimbursement of Expenses, at 4, ¶ 9 (emphasis added).

in this entire litigation will still represent a modest multiplier over their total lodestar for the entire litigation."[8]

- "As discussed above, prior to the settlements, merits discovery had concluded, Plaintiffs' counsel reviewed over 2.5 million pages of documents, including data regarding Hydrogen Peroxide sales transactions by Arkema, FMC, and other defendants, taken over 30 depositions, and had received cooperation from the defendants that had previously settled. . . . That work enabled Class Counsel to assess the strengths and weaknesses of the case." *Id.* at 18-19.

- "Class Counsel respectfully requests that the Court . . . compensate Class Counsel for its extensive work on this case with a fee award of 30% of the FMC Settlement Amount." *Id.* at 27.

- "Therefore, a supplemental award of attorneys' fees in the amount of 30% of the FMC settlement fund (30% of $10 million, or $3 million), when considered together with the lodestar value of Class Counsel's time since August 31, 2008 (as reported in paragraph 20 of Supplemental Co-Lead Counsel Declaration), and reported lodestar through August 31, 2008 and the Court's earlier fee award (as summarized in the Court's Interim Fee and Expense Order) (Docket No. 520), *would result in a multiplier of 1.255 over total reported lodestar for the entire litigation. . . .*" *Id.* at 31 (emphasis added).

In light of the fact that "most of the work that led up to the Arkema and FMC settlements was performed prior to the filing of the First Joint Declaration," it would make no sense to exclude work performed prior to the filing of the First Joint Declaration in allocating fees attributable to the Arkema and FMC settlements. Yet that is exactly what Hausfeld LLP has proposed to do. *See* Exhibit 4 hereto.

Alternatively, Hausfeld LLP proposes to re-allocate fees that were earned by and awarded to Cohen Milstein before Mr. Hausfeld left the firm. *See id.* Such a re-allocation makes no sense, in that it would allocate fees to a law firm that was not in existence when the fees were earned and awarded. Moreover, such a re-allocation conflicts with the Settlement Agreement reached between Cohen Milstein and Hausfeld LLP in February 2009, in which Hausfeld LLP

---

[8]   Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Proposed Settlements with Remaining Defendants Arkema, Inc., Arkema France, and FMC Corporation, and Plan of Allocation with Respect to FMC Settlement Funds, and Award of Attorneys' Fees and Reimbursement of Expenses, at 5.

agreed, in exchange for valuable consideration, to "unconditionally waive any claim to a share of fees and expense reimbursements" earned prior to November 6, 2008 in this matter.[9]

The most fair and reasonable method for allocating the contested fees between Cohen Milstein and Hausfeld LLP is based on the firms' respective lodestars from the inception of the litigation through June 30, 2009. The Court's July 14, 2009 Order Granting Approval to Class Counsel's Petition for Attorneys' Fees and Reimbursement of Litigation Expenses provides strong support for such an allocation. In its lodestar cross-check analysis, the Court used the lodestar and multiplier from the inception of the case, Order at 2 n.1, and noted "the eminent reasonableness of the total fees for the creation of an almost $100 million common fund." *Id.* The Court thus made clear that the fees awarded for the final settlements were not to be considered in isolation, but as part of the compensation of Plaintiffs' counsel for their work performed and results generated over the entire course of the litigation. The allocation of the contested fees should likewise reflect the work performed since the beginning of the litigation.

## CONCLUSION

For the foregoing reasons, Cohen Milstein respectfully requests that the Court issue an Order providing that the fees from the FMC settlement fund payable to Cohen Milstein and Hausfeld LLP be allocated between the two firms in proportion to their respective lodestars from the inception of this litigation.

---

[9]  The February 2009 Settlement Agreement was mediated by United States Magistrate Judge Timothy R. Rice of this District. Because the present dispute centers on this Court's allocation of attorneys' fees from the FMC settlement fund, rather than on interpretation of the February 2009 Agreement, Cohen Milstein believes it is appropriate for resolution by this Court.

| Dated: September 2, 2009 | Respectfully submitted,<br><br>/s/ Agnieszka M. Fryszman<br>Daniel A. Small<br>Richard A. Koffman<br>Agnieszka M. Fryszman<br>**COHEN MILSTEIN SELLERS & TOLL PLLC**<br>1100 New York Avenue, N.W.<br>Suite 500 West<br>Washington, D.C. 20005<br>(202) 408-4600 |
|---|---|